[No. 12825.   Department One. — May 31, 1890.]

S. MATTINGLY, APPELLANT, *v.* PHILIP A. ROACH, ADMINISTRATOR, ETC., RESPONDENT.

ACTION ON SPECIAL CONTRACT — MISLEADING INSTRUCTION AS TO AMOUNT OF RECOVERY — CONFLICTING EVIDENCE — IMPEACHMENT OF PLAINTIFF. — In an action to recover money on a special contract, if the plaintiff's evidence tends to show him entitled to recover the amount sued for, and the defendant, for the purpose of impeaching plaintiff's testimony, offers counter-evidence as to plaintiff's admissions, tending to show him entitled to a less sum under the contract, an instruction that the jury are limited to the amount sued for, and that their verdict must be for the whole of that amount or for no sum at all, is misleading, and prejudicially erroneous.

ID. — AGENCY — COMMISSIONS FOR SALE — FINDING PURCHASER — REFUSAL OF PRINCIPAL — INSTRUCTIONS. — In an action by an agent to recover commissions for the sale of mining stocks, under a written contract entitling him to receive all sums for which the stocks might be sold in

excess of a certain amount, within a specified time, if the evidence adduced on his part tends to show that during the existence of the contract he did find purchasers who were ready, willing, and able to take the stocks, and pay therefor a sum in excess of that amount, and that the principal, when informed thereof, refused to transfer or sell the stock, it is sufficient to entitle him to have the case submitted to the jury for its determination of the facts, and to have proper instructions given respecting the amount which he is entitled to recover.

ID. — REPUDIATION OF CONTRACT BY PRINCIPAL — TENDER BY AGENT. — When the principal repudiates a contract with his agent in respect to the sale of mining stocks, it is not necessary for the agent to take any further steps toward sending or tendering the money to him, in order to entitle him to sue for his commissions.

SALE OF PERSONAL PROPERTY — PLACE OF DELIVERY. — Personal property is deliverable at the place where it is at the time of sale or agreement to sell, unless the seller has agreed to deliver it elsewhere, or an option as to the place of delivery is provided for.

ID. — MINING STOCKS. — Mining stocks are personal property, and subject to the rules of personal property in regard to the place of delivery when sold.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion.

*D. William Douthitt,* and *Edward J. Pringle,* for Appellant.

*John A. Wright,* for Respondent.

BELCHER, C. C. — Plaintiff brought this action to recover the sum of one hundred and twenty-five thousand dollars, commissions for the sale of mining stocks.

The complaint alleges that on the 15th of October, 1882, Thomas H. Blythe executed to the plaintiff two agreements in writing, whereby he contracted, promised, and agreed that if plaintiff would, within four months thereafter, procure a purchaser for all the capital stock of the Blue Jacket Mining Company, a corporation, who would be willing and ready within that time to pay Blythe three hundred thousand dollars therefor, that he would transfer all said stock to said purchaser, so as to

vest the title in him free from all encumbrances; that
Blythe further agreed in and by his said contracts that
all sums exceeding three hundred thousand dollars for
which plaintiff might sell the said stock might be re-
tained by him as commissions for his services and ex-
penses in making the sale and procuring a purchaser;
that upon the faith of the agreements, and in considera-
tion thereof, plaintiff proceeded to London and other
parts of Europe for the purpose of procuring such pur-
chaser, and that within the time named in the agree-
ments, he procured a purchaser or purchasers of the stock
in England who were ready, willing, and able to pay
therefor the sum of four hundred and twenty-five thou-
sand dollars, and that he then contracted and agreed to
sell and convey the stock to such purchaser or purchasers
for the said sum; that within the time named in the
agreements, and long before the expiration thereof, plain-
tiff, being then in London, by and through his agent in
San Francisco, notified and informed Blythe that he had
procured such purchaser or purchasers, who were ready,
willing, and able to take the said stock and pay there-
for the sum of four hundred and twenty-five thousand
dollars; that Blythe, at the time of such notification,
absolutely refused to make the sale or convey the stock
to the said purchaser, and thereupon the plaintiff was
compelled to rescind his agreement with the purchaser
for the stock so procured in England; that Blythe died
in April, 1883, and the defendant was appointed the ad-
ministrator of his estate; that plaintiff duly presented
his claim to the administrator for allowance, but the
same was rejected.

The prayer is, that plaintiff have judgment for the
sum of one hundred and twenty-five thousand dollars,
with interest and costs, to be paid out of the estate of
Blythe, in due course of administration.

The answer admits that Blythe made the written
agreements referred to, and died at the time alleged;

that defendant was appointed administrator of his estate, and that plaintiff's claim was presented and rejected, but denies all the other averments of the complaint.

The case was tried before a jury, and the verdict and judgment were for the defendant. The appeal is from the judgment, and an order denying the plaintiff a new trial.

The two written agreements relied upon by the plaintiff were executed by Blythe in San Francisco on the same day, and are to be construed and read together as one contract. By the first instrument Blythe agreed to sell to Mattingly all the stock of the Blue Jacket Mining Company, "at any time within four months from the date hereof," provided Mattingly "shall see fit and elect to purchase the same for the sum of five hundred thousand dollars, and pay said sum in gold coin of the United States within the period aforesaid." It is also provided that if Mattingly should have an expert on the ground of the company before the expiration of the four months, and the expert should report in writing favorably to Blythe, then Blythe would extend the agreement to sell for the further period of two months. And it is further provided that "time is the essence of this contract, and this contract shall close and be at an end on the expiration of said four months." By the second instrument, after referring to the first, it is agreed that Mattingly "may, within the time limited in said agreement, or within the time of any extension thereof, sell the said stock of said company for a sum not less than three hundred thousand dollars, which shall be paid to the said Blythe in full payment for all of the stock of said company, free and clear of all commissions and expenses of and pertaining to said sale, and all sums for which said stock shall be sold by the said Mattingly in excess of the sum of three hundred thousand dollars shall be retained by the said S. Mattingly as commis-

sions for effecting such sale, or if excess is paid to me, then I will pay said excess to S. Mattingly or his assigns on demand."

There is no pretense that Blythe granted any extension of time, and the authority of Mattingly, under the agreements, consequently expired on the 15th of February, 1883.

It is urged on behalf of appellant that the court erred in the admission of evidence, and in its instructions to the jury, and that the judgment should therefore be reversed. On the other hand, it is earnestly contended for respondent that, looking at the whole case, it is plain that the jury could in no event have found for the plaintiff, and hence that the alleged errors were wholly immaterial. It is said that, taking all the testimony introduced by plaintiff, it cannot be seen therefrom that plaintiff ever effected a sale of the stock, or found a purchaser who was ready, able, and willing to take the stock and pay therefor the sum of four hundred and twenty-five thousand dollars, or any other sum, and that " the evidence produced by the defendant sets the whole matter at rest, and stamps the action as wholly unfounded."

The testimony is somewhat voluminous, and we do not think it necessary to state it at length. It is enough to say that, in our opinion, plaintiff produced testimony tending to sustain his side of the case, and to show that he did find purchasers who were ready, willing, and able to take the stock and pay therefor the sum of four hundred and twenty-five thousand dollars over and above a commission of seventy-five thousand dollars to be allowed in England, and that Blythe was so informed about the middle of January, and immediately refused to transfer the stock, saying " that the property was more valuable than what he was getting," and that " if the money was in hand he would not accept it." No motion for nonsuit was made, and the case was properly

submitted to the jury for its determination as to the facts.

This being so, the only question for consideration is, Did the court commit errors which were prejudicial to appellant?

At the request of the plaintiff, the court instructed the jury that if they believed the plaintiff found a purchaser who was able, ready, and willing to purchase and pay for the stock at five hundred thousand dollars in gold coin of the United States before the fifteenth day of February, 1883, and informed Blythe of that fact in season, so that a sale could have been consummated before the day named, and Blythe refused to make the sale, then the plaintiff was entitled to recover the amount sued for; and that in such case the facts that plaintiff's bargain with the proposed purchaser was merely verbal, and that the purchaser did not actually tender the money, were immaterial, if Blythe refused to make a sale, or expressly repudiated his contract with the plaintiff.

The court then gave to the jury the instructions asked by defendant, the last of which reads as follows:—

"At the request of the defendant, I charge you further, if you find for the plaintiff you are limited to the amount sued for by him, that is, one hundred and twenty-five thousand dollars and interest, as he, plaintiff, has brought suit upon a special contract to recover all sums for which the stock of the Blue Jacket Mining Company should be sold in excess of three hundred thousand dollars, and the plaintiff claims that he sold the property for four hundred and twenty-five thousand dollars. You are limited to the amount sued for, and your verdict must be, if for the plaintiff, for the whole amount of one hundred and twenty-five thousand dollars and interest, or no sum at all."

Under this instruction the jurors were compelled to return a verdict for the defendant, unless they should

find that plaintiff was entitled to recover the full amount claimed by him, and though they might be satisfied that he was entitled to recover a less amount. But the defendant, against the objections of plaintiff, and upon the statement of counsel that he offered it for the purpose of impeaching plaintiff's testimony in some respects, had been permitted to introduce in evidence, among other things, the verified claim of plaintiff, which was presented for allowance against the estate of Blythe. This claim was for one hundred and twenty-five thousand dollars, and after setting out, in substance, the terms of the contract, it proceeded to state "that this claimant procured a purchaser who was ready and willing to take said stock in England at the price of four hundred thousand dollars," etc.

Now, if from this, or other evidence in the case, the jurors believed that the plaintiff was entitled to recover the sum of one hundred thousand dollars, or any less sum than he claimed, they should have been permitted to so find, and the instruction to the contrary was therefore misleading and erroneous.

The other alleged errors do not require extended notice. The code provides that personal property is deliverable at the place where it is at the time of the sale or agreement to sell, unless the seller has agreed to deliver it elsewhere, or an option as to the place of delivery is provided for. (Civ. Code, secs. 1754 et seq.) The stock of the Blue Jacket Mining Company was personal property, and was in San Francisco at all the times named in the complaint. Blythe never agreed to send the stock to Mattingly, or gave him any option as to the place of delivery. It was therefore to be delivered and paid for in San Francisco, and the instructions upon that subject were proper. Of course, when Blythe repudiated his contract, if he did repudiate it, it was not necessary for the plaintiff to take any further steps toward sending or tendering the money to him.

And as to the admission of evidence, it is not clear to us that the court erred in this respect, and if it did, the errors will probably not be repeated on a new trial. It is not necessary, therefore, to consider them further.

For the errors above mentioned, we think the judgment and order should be reversed, and the cause remanded for a new trial.

GIBSON, C., and HAYNE, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment and order are reversed, and the cause remanded for a new trial.

Hearing in Bank denied.