## RUSSELL Et Al. *v.* RUFFCORN Et Al.

No. 2949

April 25, 1932.                    10 P. (2d) 632.

*F. R. McNamee, Leo A. McNamee, Edwin J. Miller* and *Wier Casady*, for Appellants:

*John W. Maltman, Warner I. Praul, Louis G. Campbell* and *A. W. Ham,* for Respondent:

## OPINION

By the Court, SANDERS, J.:

This is an equity case of long standing. The case is here on plaintiffs' appeal from a judgment of dismissal of the action after trial, entered in June, 1930, and from an order denying plaintiffs' motion for new trial, entered in December, 1930. Since the case reached this court, defendants in error gave notice that they would, on the date specified, move: First, to dismiss the appeal.

on the ground that the bill of exceptions was not settled, allowed, and served as required by law; that the bill of exceptions was not filed within the time required by the statute. Second, to strike from the bill of exceptions a document entitled "Assignments of Errors of Law Occurring on the Trial," upon the ground that no assignment of errors was filed and served on motion for new trial as required by law. Third, to strike from the bill of exceptions certain affidavits used on the motion for new trial for after-discovered evidence, in that the same were not indorsed as required by law.

As to the motion to dismiss the appeal, counsel for movants consent that the motion may be disregarded as having been improvidently made. As to the motion to strike the assignments of error, counsel for contestants consent that the motion may be granted. The motion to strike the affidavits will be disregarded for the reason that the matter contained in the affidavits affects in no way the disposition made of the appeal. The respective motions are denied.

An abridged statement of the history of the case will serve to clarify the issues. In May, 1922, Oren Ruffcorn, as principal promoter, caused to be created and organized under the Nevada laws a corporation called "National Land Value Guaranty Company," with an authorized capitalization of $5,000,000, divided into 50,000 shares of the par value of $100 each per share, 10,000 of which were classed as preferred, and 40,000 were classed as common stock. The corporation was organized for the purpose of engaging in the business of selling and issuing contracts of guaranty of land values. The principal office of the company was located at Las Vegas, Nevada, with its business office in Los Angeles, Calif. Upon its organization the company acquired certain actuarial tables and tables of classification of values of land from one E. E. Luesley, the compiler of the tables, and issued him therefor at par 7,000 shares of its capital stock, which tables were carried on the books of the company as a property right of the value of over a million dollars. The company

qualified to engage in business in the State of California in virtue of a statute of that state known and called "Corporate Securities Act." Stats. 1917, p. 673, as amended. In May, 1923, on the application of the company, signed by Oren Ruffcorn as its president, the commissioner of corporations of California, in virtue of said corporate securities act, issued to the company a permit to sell and issue 4,000 shares of its capital stock for cash at par, for the uses and purposes stated in the application, upon certain conditions, two of which read as follows:

"(b) That 75 per cent. of each payment received from the sale of any of the shares hereinabove authorized shall be paid to the Bank of America in accordance with the terms of the Trust Agreement entered into by the applicant and said Bank, dated May 5th, 1923, to be held by said Bank for the establishment of the Reserve Fund, and subject to the further order of the Commissioner of Corporations."

"(c) That all certificates evidencing 6,500 shares of the 7,000 shares of Capital Stock heretofore issued shall be forthwith deposited with a Depositary to be selected by said certificate holder and approved by the Commissioner of Corporations, to be held as an escrow pending the further order of said Commissioner; that the receipt of such Depositary for such certificates shall be filed with said Commissioner of Corporations and that while said certificates shall be so held, the holder of the shares evidenced thereby shall not sell, or offer for sale, or otherwise transfer; or agree to sell or transfer such shares, until the written consent of said Commissioner shall have been obtained so to do."

In January, 1925, Oren Ruffcorn and his associates caused to be created and organized under the Nevada laws a corporation called "National Land Insurance Company," consisting of 200 shares of common stock of the par value of $100 per share each. This corporation was organized for the purpose of engaging in the business of land insurance. The principal office of the company was at Las Vegas, Nevada. Its business office

was in Los Angeles, Calif. The National Land Value Guaranty Company acquired all of its capital stock except that of its qualifying directors. The company qualified to engage in business in the State of California in virtue of the consent of the insurance commissioner of that state.

In January, 1926, the National Land Value Guaranty Company sold a number of preferred shares of its capital stock to residents of the city of Las Vegas, Nevada, and took as security for the payment for the stock first mortgages on the real estate of the purchasers. The sum of the mortgages aggregated over $217,000. The mortgages so taken in the name of the company were delivered into the hands of the treasurer of the State of Nevada, presumably for the purpose of giving to the National Land Insurance Company a legal status in Nevada and elsewhere. All of the mortgages so taken were subsequently canceled and annulled in the court below at the suit of the mortgagors.

On February 5, 1926, at the city of Los Angeles, State of California, Oren Ruffcorn and John L. Russell entered into a written agreement which, among many others, contained the following clauses:

"Whereas, Oren Ruffcorn, of the City of Los Angeles, County of Los Angeles, and State of California, owns or controls the ownership of Thirty - three Hundred and Fifty (3350) shares of the Common Capital Stock of the National Land Value Guaranty Company of the issue made prior to July 19, 1924, and

"Whereas, said Thirty - three Hundred and Fifty (3350) shares of stock have been placed in escrow with the Corporation Commissioner of California under limitations and restrictions declared by said Commissioner, and

"Whereas, said Oren Ruffcorn desires to sell said Thirty-three Hundred and Fifty (3350) shares of stock unto John L. Russell, of the City of Las Vegas, County of Clark, and State of Nevada, and said John L. Russell is desirous of purchasing said stock,

"Now, therefore, it has been and is hereby agreed between the undersigned as follows:

"Said Oren Ruffcorn agrees to sell unto said John L. Russell, and John L. Russell agrees to purchase from and through said Oren Ruffcorn Thirty-three Hundred and Fifty (3350) of said shares of the Common Capital Stock of the National Land Value Guaranty Company, of the issue prior to July 19, 1924, now standing in the name of Oren Ruffcorn and in escrow with the Corporation Commissioner of the State of California, at and for the price of Fifty ($50.00) Dollars per share, payable as follows:

"Said John L. Russell concurrently upon transfer to him of Eight Hundred (800) shares of said stock, will convey unto said Oren Ruffcorn the ranch now owned by said John L. Russell, located in Las Vegas, Nevada, and containing approximately Two Hundred (200) acres, conveyance to be by the usual grant or warranty deed, free and clear of all liens and encumbrances, * * * subject to a present existing lease which provides for $100.00 per month rental, expiring March 1st, 1928, which lease shall be at once assigned to Oren Ruffcorn, earned rental to be prorated between the parties. * * *

"Said John L. Russell by reason of said conveyance shall receive a credit of Sixty Thousand ($60,000.00) Dollars on the total purchase price of said stock, and the balance of the purchase price, to wit: One Hundred and Seven Thousand, Five Hundred Dollars shall be paid as follows:

"Ten Thousand ($10,000) Dollars on or before April 1, 1926. * * * "

On February 6, 1926, as promised, John L. Russell and Mary J. Russell executed and delivered to Oren Ruffcorn a deed to the 200 acres of land described in the agreement, 160 acres of which belonged to John L. Russell and 40 acres belonged to his mother, Mary J. Russell.

On February 9, 1926, John L. Russell was elected a director of the National Land Value Guaranty Company,

and on said date was appointed assistant secretary of the company.

In April, 1926, John L. Russell made a further payment of $10,000 on the purchase price of said 3,350 shares of stock, and in July, 1926, made another payment of $10,000, less a credit of $250 for services rendered by him in connection with the sale of stock of the National Land Value Guaranty Company prior to the execution of the agreement. No further payments were made.

In September, 1926, upon investigation of third parties who had under consideration a proposition to take over the National Land Value Guaranty Company, it was found that the company was on the verge of bankruptcy.

On September 20, 1926, John L. Russell and Mary J. Russell commenced this suit against Oren Ruffcorn for the declared purpose of having the court direct the cancellation and discharge of record of their deed executed and delivered to Oren Ruffcorn in pursuance to the contract of February 5, 1926, and to direct the reconveyance to them of the land upon the ground that no consideration was received for the land that passed by their deed. The complaint underwent several amendments. In their first amended complaint the Joint Holding Company, a California corporation, was made a party defendant. This corporation was created and organized in September, 1926, by Oren Ruffcorn and his associates as the holders and owners of a majority of the outstanding capital stock, common and preferred, of the National Land Value Guaranty Company. On October 1, 1926, and after the commencement of the action and subsequent to the filing of notice of lis pendens, there was placed of record in Clark County, Nevada, a deed dated on September 8, 1926, from Oren Ruffcorn and wife to the Joint Holding Company, conveying the land which had been theretofore conveyed by the Russells to Oren Ruffcorn on February 6, 1926.

In their third amended complaint, filed as late as in February, 1928, the plaintiffs set up two causes of action

and exhibited with and made a part of the complaint the contract of February 5, 1926, the "Corporate Securities Act of California," with amendments; the corporation law of the State of California; and the permit of the commissioner of corporations of date May 11, 1923. As and for a first cause of action it was alleged, in substance, that the agreement of February 5, 1926, was invalid and illegal in that it was made and entered into in violation of certain provisions contained in the corporate securities act of the State of California, and also in violation of the limitations and restrictions contained in the permit of the commissioner of corporations of California; that the deed of plaintiffs to the defendant Oren Ruffcorn was void, in that no consideration was received for the land that passed.

As and for a second cause of action the complaint alleged, in substance, that the defendant Joint Holding Company was an illegal corporation, in that it had not complied with the statutes of California respecting the organization of corporations; that John L. Russell was induced to enter into said contract and that the deed executed and delivered in pursuance to its terms and conditions was procured through the false and fraudulent misrepresentations of Oren Ruffcorn made to John L. Russell at the time of the execution of said agreement with respect to the business, the amount of business, the character of business, the business and affairs of the National Land Value Guaranty Company and the value of its stock; that the corporation was insolvent and its securities valueless. The complaint alleged that the Joint Holding Company was not a bona fide or innocent purchaser, and that the conveyance to it by Oren Ruffcorn of the land in suit was made with intent to hinder, delay, and defraud the plaintiffs. The complaint concluded with the prayer that the deeds mentioned be canceled and discharged of record and that the land that passed be reconveyed to plaintiffs with an accounting. After a full hearing of the issues joined upon the pleadings, a trial was had to the court without the assistance of a jury. The court made and caused to be entered

extended findings of fact which specifically negatived each and all of the issues tendered in the plaintiffs' third amended complaint. From its findings of fact the court deduced the conclusions of law that the contract made the basis of the plaintiffs' several causes of action was a legal, existing, and enforceable contract; that the Joint Holding Company was a legally constituted and existing corporation under the law of California; that it was the lawful owner of the land in controversy, free from the claims of the plaintiffs. Upon its findings of facts and conclusions of law the court entered judgment of dismissal of the action with costs and denied plaintiffs a new trial. Hence this appeal.

Referring to the parties here as they stood in the court below, the plaintiffs seek reversal of the judgment and of said order upon numerous grounds. It is contended that the contract of February 5, 1926, was illegal and unenforceable, in that it was made and entered into in violation of the provisions contained in the corporate securities act of California and in violation of the permit of the commissioner of corporations of California in virtue of said act. In reply to this contention counsel for defendants cite and stand upon the trial court's findings of fact to the effect that neither the corporate securities act of California nor any law inhibited or abridged the right of Oren Ruffcorn to contract for the sale of the 3,350 shares of stock or to sell the same; that nothing in the permit of the commissioner of corporations of California restricted or abridged the right of Oren Ruffcorn to make sale of the shares of stock deposited in escrow with the commissioner of corporations of California and standing on the books of the company in the name of Oren Ruffcorn or the right of John L. Russell to buy the shares of stock; that Russell agreed to buy said shares of stock with knowledge that the same had been placed in the Bank of America under an escrow with the limitations and restrictions as provided in the permit of the commissioner of corporations; and that the delivery of the stock was subject to the terms and conditions of said

permit. The court's finding and its conclusion respecting the enforceability of the contract and the inviolability of the deed executed and delivered in accordance with the contract are traceable to the court's interpretation of the corporate securities act of California and the powers of the commissioner of corporations charged with the administration of the law.

At the time of the issuance of the permit of the commissioner of corporations of California of date May 11, 1923, the case of People v. Pace, 73 Cal. App. 548, 238 P. 1089, had not been decided. In that case it was held that the corporate securities act, sec. 2, subd. 9 (a), in so far as it required the owner of securities not the issuer thereof to secure broker's permit if he desired to sell such securities in more than one sale, violated the Constitution of the United States and of the State of California, in that it contravened the inalienable right of every citizen to enjoy, acquire, possess, and protect his property.

■■ It is argued on behalf of the defendants that People v. Pace eliminates from this case any question as to the right of Oren Ruffcorn to sell or contract for the sale of the 3,350 shares of the capital stock under his ownership and control and impounded by order of the commissioner of corporations of California with the restriction and limitation that the shares of stock so impounded in escrow could not be sold or dealt with without the consent of the commissioner. If this contention is to prevail, it would be a gross injustice to the plaintiffs and an unconscionable advantage to the defendants to permit the latter to defend this action upon the ground that the permit of the commissioner of corporations was invalid, illegal, and unconstitutional. It must not be overlooked that this is an equitable proceeding in which specific justice between the parties to a contract is of greater importance than the enforcement of a mistake of law to the advantage of one of the parties and to the detriment of the other. Under the facts and circumstances disclosed by this record, for a court of equity to say that the defendant Oren

Ruffcorn may retain the fruits of the contract, and that the plaintiffs be dismissed empty handed and stripped of their property, does not accord with established principles of equity, as I understand them. If, on the authority of People v. Pace, the permit of the commissioner of corporations of California and the contract for the sale and purchase of the stock in suit is to be stripped of its provisions respecting the sale of or the transfer of the stock impounded under the permit, then the case is resolvable into one of whether or not the plaintiffs have shown themselves to be entitled in equity to the return of the land which was conveyed and accepted as a credit of $60,000 on the purchase price of the stock, at $50 per share, totaling $165,000, which stock was never issued or delivered. The defendants cannot rely upon People v. Pace as an excuse for the nondelivery of the stock, but they contend and insist that the proof shows that the defendant John L. Russell agreed to purchase the stock without its delivery, well knowing at the time of the execution of the agreement that the stock had been placed in an escrow under the control of the commissioner of corporations of California. It is impossible to read this record without seeing plainly that it was the intention of the parties and their understanding, implied, if not expressed, that the consent of the commissioner of corporations to the sale of the stock would be obtained. The evidence tends to show that the parties to the contract believed honestly that such consent could and would be obtained. The evidence further tends to show that the parties individually and through others endeavored to obtain the release of the stock from the escrow. One is no more responsible than the other for its nondelivery. The truth is that John L. Russell agreed to buy the stock and conveyed his land as part payment therefor. Under these circumstances the defendant Oren Ruffcorn obtained property belonging to plaintiffs for which he gave nothing in return. This creates a proper basis for this action for the return of the land. Ordinarily, if a person voluntarily pays another

money, he cannot maintain an action to recover it back. This rule, however, does not apply where money is paid under a contract, and the consideration fails. The money or property may be recovered back in such a case. Clark on Contracts (4th Ed.), p. 647. 13 C. J. 367. The contract of February 5, 1926, made the basis of the plaintiffs' several causes of action, was and remained executory. Undoubtedly plaintiffs never received the consideration bargained for in the contract. Consequently, the writer of this opinion is unable to concur in the conclusion of law deduced by the trial court from its findings of fact that the contract is an enforceable contract. Under the facts and circumstances as disclosed by this record, I conclude that the defendant Joint Holding Company was not a bona fide or innocent purchaser of the land. The plaintiffs having received no consideration whatever for their deed, it would be against equity and good conscience to permit the Joint Holding Company to retain and keep land for which its grantor gave nothing in return. This conclusion renders it unnecessary to consider the other matters discussed by counsel for plaintiffs in respect to the insufficiency of the evidence to support the trial court's findings on the issue of fraud and fraudulent misrepresentations.

Upon the whole case the majority of the court entertains the view that the judgment of dismissal of the action should be reversed, and to the end that this protracted litigation be concluded and ended, it is ordered that the judgment and order appealed from be reversed, and the cause remanded with directions to the court below to sustain and grant the prayer of the plaintiffs' third amended complaint.

It is so ordered.

### ON PETITION FOR REHEARING

July 6, 1932.

*Per Curiam:*

Rehearing denied.

DUCKER, J.: I dissent.