[Civ. No. 4731.   Third Appellate District.—May 23, 1933.]

JOHN L. RUSSELL, Appellant, v. OREN RUFFCORN et al., Respondents.

Edwin J. Miller and Wier Casady for Appellant.

E. B. Evans, *in pro. per.*, Lorrin Andrews, Farrand & Slosson, Geo. W. Padgham, John W. Maltman, Warner L. Praul and L. G. Campbell for Respondents.

U. S. Webb, Attorney-General, and Ralph O. Marron, Deputy Attorney-General, as *Amici Curiae.*

BURROUGHS, J., *pro tem.*—This is an appeal by the plaintiff from a judgment in favor of the defendants. The complaint is in four counts, and in so far as it is material to a decision of this appeal, is as follows:

The first count alleges that the plaintiff agreed to purchase from the defendants 3,350 shares of the capital stock of the National Land Value Guaranty Company, a Nevada corporation, at a total price of $167,000, and that he paid thereon the sum of $19,750; that the contract of purchase was made through the defendant Oren Ruffcorn, who was acting for himself, and also as the agent of his co-defendants; that at the time of the execution of the above-mentioned agreement, all of said stock was deposited with the Bank of America in Los Angeles, in an escrow proceeding and under the control of the Commissioner of Corporations, of California, and the defendants were not permitted to sell said stock or to offer the same for sale without the written consent of said commissioner, and they did not have possession of said stock and could not, and did not, deliver the same to the plaintiff, and were prohibited by the laws of California from making such delivery, and plaintiff has never received anything of value for the money paid by him to the defendants for said stock; that at the time of the sale and the payment of the money by plaintiff to the defendants, the latter, through their agent, Oren Ruffcorn, represented to plaintiff that they had a right to sell the same, and plaintiff relied thereon and paid the money therefor, and did not learn, until after such

payments were made, that the defendants did not have the stock nor the right to sell or deliver the same.

The second cause of action alleges that the defendants, through their agent, Oren Ruffcorn, represented to plaintiff that they owned 3,350 shares of said stock, and also that the corporation owned a large amount of property of great value, and was doing a profitable business, and was earning large sums of money from its business; that the said corporation then had business already on hand which would profit it a million dollars in the near future; that the said corporation was solvent and in good condition and a going concern, and its stock was worth more than its face value; that the plaintiff, not knowing otherwise, believed and relied upon said representations and entered into said contract and paid $18,750 on the purchase price of said stock; that, after he had made said contract of purchase, and after the payment of said moneys, he learned that all of said representations were false and fraudulent; that said corporation had no assets; that its stock was worthless; that it was in debt $190,000 and was insolvent; that the stock which they proposed to sell to plaintiff was impounded in an escrow proceeding in the Bank of America in Los Angeles under the terms of a permit by the Commissioner of Corporations of California, authorizing the sale of treasury stock of the corporation, and which permit prohibited the sale of said impounded stock without the written consent of the said commissioner, and that such written consent was never obtained; that had he known of the condition of said corporation and the falsity of the representations and the condition of said stock in escrow, he would not have entered into said contract of purchase or paid said money or any part thereof; that shortly before the bringing of this suit, the said corporation was adjudged bankrupt, and that said money paid for said stock became lost to plaintiff, and that he never received anything of value therefor.

The third count is for money had and received by the defendants for the use and benefit of plaintiff in the sum of $19,750.

The fourth count sets out the written contract between the plaintiff and defendants and the proportionate share which each defendant received from the $19,750. It also

sets out another written agreement, referred to as the trust agreement, whereby one Emil Nybery was named as a trustee for the purpose of taking title to the escrowed stock of the corporation, and upon performance of the conditions relating to the sale conveying the same to plaintiff, and also for the distribution of the proceeds of the sale of the stock herein referred to between the defendants. Said count of the complaint follows in line with count No. 1 above referred to.

A joint answer to the foregoing complaint was filed by Max B. Ruffcorn, Ola Ruffcorn and Georgia Ruffcorn, in which they deny that Oren Ruffcorn was acting as their agent, or that they owned said stock, or any interest therein, or that they received from the plaintiff, John L. Russell, any money whatsoever; and further deny any false or fraudulent representations to the plaintiff.

The defendant E. B. Evans also filed a separate answer in which he denies the alleged agency of Oren Ruffcorn or any false or fraudulent representations, or that he is indebted to the plaintiff.

The separate answer of Oren Ruffcorn also denies that in making the agreement he was the agent of the several defendants, or that he was guilty of any fraud, and alleges that the stock sold to plaintiff was his own property and that plaintiff purchased it with full knowledge of all the circumstances surrounding the transaction.

The court found that on February 5, 1926, the plaintiff and the defendant Oren Ruffcorn (but not the other defendants) entered into an agreement whereby the said defendant Oren Ruffcorn agreed to sell and the plaintiff agreed to buy 3,350 shares of the capital stock of the National Land Value Guaranty Company, the corporation above referred to of a par value of $100 per share, for $50 per share; that defendant Oren Ruffcorn was not acting in the making of said contract as the agent of any of the defendants, and that the defendants Max B. Ruffcorn, Ola Ruffcorn and Georgia Ruffcorn were not the owners of any of said shares of stock; that 3,000 of said shares of stock were the personal property of said Oren Ruffcorn, and that the other 350 shares belonged to the defendant E. B. Evans; that the Evans stock was included in the agreement made by Oren Ruffcorn; that prior to February

16, 1926, the defendant E. B. Evans and the plaintiff herein made an oral agreement whereby Evans agreed to sell to plaintiff and plaintiff agreed to buy said 350 shares of stock at the same price and upon the same terms as set forth in the agreement above referred to; that on February 16, 1926, all of the defendants entered into an agreement among themselves and with one Emil Nybery, as trustee, that the proceeds from the sale of said stock, pursuant to said agreement above referred to, should be distributed when and as received by the said Emil Nybery, acting as trustee, in specified proportions; that the percentage of the proceeds of the sale of said stock to be paid to each of the defendants by said agreement dated February 16, 1926, was made to them in settlement of certain advances of money made by them severally to said Oren Ruffcorn from time to time, covering a period of years prior thereto; that pursuant to said agreement dated February 5, 1926, the plaintiff paid to the defendant, Oren Ruffcorn, a total of $19,000, which money was distributed to the several defendants, according to their respective percentages as set forth in said agreement, dated February 16, 1926.

It is further found that none of the defendants had possession of the certificates evidencing said stock which was the subject of the agreement of February 16, 1926, at the time of the making thereof or thereafter. And, further, that it is true that the same had been, prior to the making of said agreements, deposited, and was, at the time of the making of the said agreements, in escrow in the Bank of America at Los Angeles, which deposit in escrow was made pursuant to the terms of a permit issued by the Commissioner of Corporations of California to the said National Land Value Guaranty Company, by the terms of which permit it was provided that certain shares of the common capital stock of said corporation theretofore issued and then owned by the defendant Oren Ruffcorn and others in the total number of 6,500 shares, should be deposited in escrow and retained therein until the further order of the commissioner, and that pending the further order of the commissioner, the same should not be sold or offered for sale or agreed to be sold, without the consent of the commissioner; that the permit issued to said corporation for the sale of its stock was prior to the making of the contract

hereinbefore first mentioned, revoked, and was not thereafter renewed.

The court also found that it was true that none of the defendants, prior to the commencement of this action, delivered any of the certificates of the stock which was the subject of said agreement between plaintiff and defendants of date February 5, 1926, but it was not true that the defendants refused to deliver the same, or that they were prohibited by law from so doing, but it was the agreement between plaintiff and defendant Oren Ruffcorn and E. B. Evans that plaintiff accepted said shares of stock, although the same were in escrow, and plaintiff accepted from Oren Ruffcorn the transfer of the shares of stock for which he paid, in escrow and expressly agreed with said defendant Oren Ruffcorn and the said E. B. Evans that he, plaintiff, would obtain consent of the Commissioner of Corporations to the transfer of the stock to himself and that defendants Oren Ruffcorn and E. B. Evans need not secure such consent.

It was also found that it was not true at the time of the sale and the payment of the moneys by the plaintiff to the defendant Oren Ruffcorn that the latter represented to plaintiff that he, or the defendants or any of them, had full right and authority to sell said stock or deliver the same or that plaintiff believed or relied upon any such representations or that plaintiff paid said money on account of such representations. It was also found that the plaintiff knew at the time the contract was entered into that the stock was deposited in said bank pursuant to the said permit of the Commissioner of Corporations, and knew that the defendants did not have, and none of them had, the certificates representing said stock in their possession, and he knew such certificates were actually in said escrow in said bank; that plaintiff had full knowledge of the terms and conditions of said permit and escrow, and made said agreement with such knowledge, and expressly made the same subject thereto.

It was also found that it was not true that the defendants, or any of them, on or about the fifth day of February, 1926, when the contract in controversy was made, or at any other time, by Oren Ruffcorn, or otherwise, represented to plaintiff that they owned 3,350 shares of stock of said

corporation, but it was found that defendant Oren Ruffcorn did own 3,000 shares of said capital stock and E. B. Evans owned the other 350 shares of stock, and that on the day last named Oren Ruffcorn was an officer of said corporation; that prior to said date Max B. Ruffcorn and E. B. Evans had been officers thereof; that neither of the last-named defendants was at the time of the making of the said contract of February 5, 1926, an officer thereof; that it was not true that the last-named defendants knew the condition of said corporation at said time, but it was true that the defendant Oren Ruffcorn knew generally the condition of the corporation at said time, but it is not true that the defendants or any of them represented to plaintiff that the corporation owned a large amount of property of great value or that it was doing a profitable business or making or earning large sums of money from its business or that it already had business on its books which would bring it an income amounting to more than a million dollars within the near future, or that said corporation was solvent or in a healthy financial condition, or that it was a going concern or that its stock was very valuable or worth more than its face value or that if the plaintiff did purchase the same it would from its earnings make him a large income or profit or that they would deliver the said stock to the plaintiff otherwise than as specified in the contract. The court found it to be true that none of the defendants made any representations to the plaintiff as to the conditions of said company or its prospects whereby plaintiff was induced to make said agreement; that the 3,350 shares of capital stock of the National Land Value Guaranty Company, agreed to be sold to plaintiff were issued in the state of Nevada; that the corporation received a valuable consideration for said shares which consisted of certain actuarial tables which were delivered to the corporation in consideration of the issue of said shares of stock of which the 3,350 shares agreed to be sold to plaintiff were a part; that the said stock belonged to Oren Ruffcorn, and on application to the Commissioner of Corporations of California for a permit to sell treasury stock in the National Land Value Guaranty Company, said commissioner required said stock belonging to Oren Ruffcorn

to be deposited in escrow and not to be sold without his consent.

The court further found that the plaintiff was familiar with the conditions of said company, and had for a long time prior to the making of the contract had access to its books and records and knew at the time the contract was entered into as well as the defendants, its prospects for business, and it is not true that plaintiff did not learn until after the payment of the moneys by him that each and all of the representations alleged in his complaint to have been made to him were falsely and fraudulently made; that it was not true that plaintiff learned after the payment of said moneys that the corporation did not own any property of any considerable value or that it was in debt approximately $190,000, or that it was insolvent or that it always had been insolvent since its organization, or that its capital stock had no value at all or that the defendants did not have said stock or that the same was impounded in escrow in the Bank of America under a permit of the Commissioner of Corporations prohibiting its sale or offer for sale; that it is not true that the plaintiff did not know the condition of the said corporation when he entered into said contract.

The court also found that it was not true that on August 1, 1926, or at any other time the defendants or either of them were indebted to the plaintiff in any sum whatever.

Appellant contends that there was a conspiracy by the defendants and that he was entitled to a judgment for the full amount claimed against all of the defendants. This contention is based upon the following admissions and evidence. It was admitted that the stock standing in the name of Oren Ruffcorn was impounded in the Bank of America under the direction of the Commissioner of Corporations in pursuance of the terms of the permit issued for the sale of the treasury stock of the corporation, which permit forbade such escrowed stock being sold or offered for sale without the written consent of the commissioner. That said written consent of the commissioner was never obtained for the sale of the stock or for the transfer thereof provided for in the contract of February 5, 1926. It was stipulated that the plaintiff paid in actual cash to Oren Ruffcorn $18,750; that the evidence shows that the 3,350

shares of stock were never delivered to plaintiff and no part of them was ever delivered or offered to be delivered or ever transferred on the books of the corporation to him. It is claimed that these admitted and proven facts establish a clear case entitling the plaintiff to a recovery. But, there is certain other evidence which has a material bearing upon the above question as follows: On May 1, 1922, all of the above stock was issued by the corporation in Las Vegas, Nevada, and became the property of Oren Ruffcorn. The stock was brought by him to California. Thereafter, and prior to February 5, 1926, the day upon which the contract in controversy was entered into, the National Land Value Guaranty Company desired to sell stock from its treasury and applied to the Corporation Commissioner of California for a permit to sell certain of its shares of stock in the state of California. Such permit was granted, but as a condition thereof, it was ordered that the personal shares of stock owned by Oren Ruffcorn be deposited in escrow in the Bank of America in Los Angeles and as a condition of the permit to sell stock by the corporation, the stock of Ruffcorn was not to be sold nor any contract of sale thereof made without the written consent of the commissioner. Subsequent to the last transaction, but prior to February 5, 1926, the permit to sell treasury stock was, at the request of the corporation canceled and annulled by the Corporation Commissioner. That revocation was written upon a blank form in which appears in printed words: "Insofar as said permit authorized or permitted the sale of the shares of said company." Thereafter and on February 5, 1926, Oren Ruffcorn entered into the agreement with the appellant to sell to him the 3,350 shares of stock in said company, and appellant agreed to buy the same under the terms and condition of the written contract and subject to the terms of the escrow. At the time the said contract was entered into, Oren Ruffcorn was indebted to the respondents Max B. Ruffcorn, Ola Ruffcorn, and Georgia Ruffcorn in varying sums of money but none of the Ruffcorns other than Oren Ruffcorn had any ownership or interest in the stock sold. Between the date of making the contract and February 16, 1926, an agreement was reached among the Ruffcorns as to the percentage of the proceeds of the sale of said stock to be paid to each one of them by Oren Ruffcorn

in settlement of his obligations to them, which obligations had accrued from time to time, over a period of years prior thereto. Included in the sale of the 3,350 shares of stock by Oren Ruffcorn to plaintiff were 350 shares owned by the respondent E. B. Evans, which the latter had agreed to sell to the appellant at the same price and upon the same terms as set forth in the agreement between appellant and defendant Oren Ruffcorn, and the same were included in the agreement of February 5, 1926, and said Evans was therefore included as a party to the agreement of February 16, 1926, which agreement provided that the stock, subject to the escrow should be conveyed to one Emil Nybery, as trustee, and as the sums of money due under the agreement of February 5, 1926, fell due, plaintiff should pay the same to said trustee, and upon such payments, the number of shares of stock should be transferred by the trustee to appellant, and the trustee should distribute said sums of money to the parties in the proportions named in the agreement of February 16, 1926. In accordance with the provisions of said trust agreement, Oren Ruffcorn did convey all of said stock except 800 shares, which he conveyed directly to appellant, to the trustee. The evidence discloses also that one of the paragraphs of the contract of February 5, 1926, between Oren Ruffcorn and appellant reads as follows: ''This agreement is subject to the escrow under which said 3350 shares of stock are held by the Corporation Commissioner of California and delivery of certificates representing said stock shall be made as rapidly as permitted by said escrow, and otherwise by the terms of this instrument.'' On February 16, 1926, Oren Ruffcorn executed his written request to the Commissioner of Corporations to transfer 716 shares of stock in said company from respondent, Oren Ruffcorn, to the appellant John L. Russell, herein. As a part of said transaction and attached to and as a part of the said request, the appellant Russell wrote upon said request the following: ''I hereby state that I am familiar with the affairs of the National Land Value Guaranty Company and wish to accept from Oren Ruffcorn the transfer in escrow of 716 shares of the capital stock from the shares now held in escrow in the Bank of America, in his name and which I understand are held subject to your further order. (Signed John L. Russell.)''

It further appears from the evidence that for over a year prior to the making of the contract the appellant visited ranchers and land owners in and in the vicinity of Las Vegas, Nevada, with one Gifford and talked in favor of mortgages being given by such land owners to the National Land Value Guaranty Company for its stock; that appellant introduced his friends as prospects for the company. In fact, the evidence discloses that the appellant took an active part in the business affairs of the corporation and on February 9, 1926, four days after the making of the contract of sale, appellant was elected a director of the corporation and its assistant secretary and that on February 23, 1926, he was a member of the executive committee of said company and continued in those official positions both before and long after the payments involved were made by him to the respondent Oren Ruffcorn, and during such time and prior to the payment of the sums involved had his office in the office of said company. The moneys paid under the contract were paid between the twenty-sixth day of April, 1926, and July of the same year. As late as October 11, 1926, appellant, as secretary of the company, addressed a letter to the stockholders advocating a consolidation with the Florida Title Insurance Company and one other, in which letter he stated, among other things: ''Both of these companies show an excellent financial statement, as you will note by the prospective consolidated statement of these three companies. It is our opinion that in making this contract we have financed your interest for all time, and we believe you will be well pleased with your 1927 dividend.''

From the foregoing evidence does it appear as stated by appellant that the defendants joined together in a common enterprise to violate the Corporate Securities Act? The court has found and the evidence sustains the findings, that Oren Ruffcorn was the owner of 3,000 shares of the stock described in the contract between him and the appellant; that it was his individual stock and that the other Ruffcorns did not own it or any part of it, but that the contract of February 16, 1926, was merely an agreement among all of the Ruffcorns that the antecedent debts of Oren Ruffcorn should be paid to them in certain proportions from the sale of said stock. Such being the case,

certainly no judgment could be entered against Max B., Ola or Georgia Ruffcorn, because they were not parties to the contract of February 5, 1926, and the court especially found upon substantial evidence that they did not own any of the stock and that Oren Ruffcorn was not acting for them. We think this disposes of the appeal, as far as they are concerned. The court also found upon substantial evidence that of the 3,350 shares of said corporation, which were included in the contract of February 5, 1926, 350 shares were owned by the defendant E. B. Evans. That the said stock was included in the agreement between Oren Ruffcorn and the appellant upon the same terms and conditions as the stock of Oren Ruffcorn. The court further found upon substantial evidence that none of the defendants were guilty of false or fraudulent representations; that the plaintiff in entering into the agreement of purchase with Oren Ruffcorn, did so with full knowledge of the condition of the affairs of the company, and also with the full knowledge of the terms of the escrow agreement, and that the stock was deposited in escrow. ▉ Such being the case, we think that the first question for solution is whether the defendant Oren Ruffcorn was entitled to sell the 3,350 shares of stock and conveyed good title to the plaintiff. This question must be determined from the effect of the order of the Commissioner of Corporations impounding the individual stock of the defendant Oren Ruffcorn and defendant E. B. Evans, as a condition precedent to the issuance of a permit to the National Land Value Guaranty Company to sell its treasury stock in the state of California. Also the effect of the order of revocation of said permit. It is clear from what has been heretofore said that the stock in controversy belonged to Oren Ruffcorn and E. B. Evans and unless they were restrained by the permit above referred to they had an absolute right to sell the same. (*People* v. *Pace,* 73 Cal. App. 548 [238 Pac. 1089].) Conceding for the purpose of this decision, but without deciding, that the Corporation Commissioner was authorized under the provisions of section 4 of the Corporate Securities Act (Deering's Gen. Laws, 1931, vol. 2, pp. 1924, 1929), to impose as a condition for the sale by the National Land Value Guaranty Company of its stock, the right to impound the stock owned by Oren Ruffcorn and Evans, did the revocation of

the permit to sell, restore to the owners of the stock the right to sell? The revocation of the permit itself was written upon a blank form which contained the printed words, ''In so far as said permit authorized or permitted the sale of shares of said company.'' It is claimed by the appellant that this revocation only affected the permit to sell the stock of the company, but left the stock owned by Ruffcorn still bound by the permit and that therefore the agreement of sale thereafter made with the appellant was void. We cannot agree with this contention. The permit which was issued to the corporation had for its sole object the sale of a certain amount of treasury stock of the National Land Value Guaranty Company; as a condition to the exercise of that privilege the personal stock belonging to Ruffcorn and Evans was impounded and withdrawn from sale, and the only logical construction to be given to the permit is that when it was revoked, no possible reason or right could exist in still withholding their stock from the owners and we think the following notice to the corporation of the revocation of the permit to sell, shows that it was the intent to make a complete revocation: ''Please take notice that the permit . . . and amended permit . . . have been revoked, rescinded and set aside by an order of the commissioner, of which the foregoing is a true copy. Edwin M. Daugherty, Commissioner of Corporations by Earl C. Adams, Deputy.'' Therefore, on February 5, 1926, when Ruffcorn entered into the agreement with the appellant to sell the stock there was no legal restriction upon his right to do so, it being his own stock. This conclusion is supported by the case of *Abbott* v. *Louisiana Securities Com.*, 149 La. 354 [89 So. 211]), which is correctly epitomized in the brief filed by counsel for Oren Ruffcorn on January 2, 1931, as follows: This case ''is one wherein, before the passage of the act creating the Securities Commission, a part of the stock of the company which applied for permit, had been disposed of to directors of the company, and after the passage of the act an application was made to the commission for a permit to sell the remainder of the stock amounting to $71,000.00. The plaintiffs (individual owners of the stock) entered into a contract with the commission under the terms of which a temporary permit for the sale of the remainder of the stock was to be granted to the company in consideration of the plaintiffs

placing their personal stock in escrow pending determination of the question as to whether permanent permit would be granted or refused. The $71,000.00 in stock of the corporation was sold under the temporary permit after which the commission refused to grant the permanent permit and in its order directed that the stock in escrow should be held until the individual owners thereof should reimburse the purchasers of the $71,000.00 worth of company stock. The suit is brought to recover the escrowed stock and the court held that it should be returned to the owners. It is further stated in said brief, referring to the case last cited:

"That case is quite parallel to the case at bar, the principal difference being that in that case the commission orders that the escrowed stock shall be held, and yet the judgment requires that it be returned, while in the case at bar it is obvious that the California commission had no thought of retaining the stock in escrow after the revocation of the permit.

"If the stock was ever legally impounded, the revocation automatically released it and a suit by Ruffcorn to recover it (as in the Louisiana case) could not add to the potency of the release by the revocation."

In principle, we consider the case of *People* v. *Pace,* *supra,* as sustaining the point that the revocation of the permit by the Corporation Commissioner to sell the corporation stock released from the escrow the individual stock of Oren Ruffcorn and E. B. Evans.

We therefore hold that irrespective of whether or not the Commissioner of Corporations had a right to impound the individual stock of Oren Ruffcorn as a condition precedent to the sale of the treasury stock by the corporation, the revocation of the permit operated to remove the restriction placed upon Ruffcorn and Evans to sell their individual stock.

In answer to the objection that the plaintiff was not a promoter and organizer, but was a member of the general public, such fact does not relieve him from a bad bargain. He knew he was buying the private stock of Ruffcorn; he admitted over his own signature that he was familiar with the affairs of the corporation and the court found upon substantial evidence that there was no fraud

practiced upon him. Therefore he could not come within the purview of the Corporate Securities Act, *supra*.

■ Under the assignment of error that the stock was owned by the defendants and that Oren Ruffcorn was their agent, it is sufficient to say that the court found that Oren Ruffcorn was the owner of the stock and not the agent of his co-defendants. Appellant argues that certain expressions and statements contained in the contract of February 16, 1926, which is signed by all of the defendants, conclusively establishes the joint ownership of all the defendants in and to said stock. But there is other evidence which is direct and positive that said defendants did not own any interest therein but that Oren Ruffcorn was the sole owner and that the trust agreement of February 16, 1926, for the distribution of the proceeds of the sale of the stock was to pay antecedent debts which Oren Ruffcorn owed to the other defendants; that in so far as defendant Evans was concerned, he was the actual owner of 350 shares of the stock. At best, such a state of the evidence merely raised a conflict as to the ownership of the stock, and upon well-settled principles of law, we cannot disturb the findings of the court. (*Wilson* v. *Fitch*, 41 Cal. 363; *Mah See* v. *North American Acc. Ins. Co.*, 190 Cal. 421 [213 Pac. 42, 26 A. L. R. 123].)

■ Further, concerning the claim that the stock was not delivered to appellant, it is clear from what has already been said that the latter had full knowledge of the condition of the corporation, and as shown by the contract itself, accepted the stock subject to the escrow. It also appears that in a conversation between defendant, E. B. Evans, the appellant Russell, and others, concerning the prospective sale of this stock to Russell, that Evans said the stock was in escrow under the direction of the Commissioner of Corporations, and that he had no right to sell it without the commissioner's consent, and Evans was told that had been taken care of; that he then turned to appellant and asked him if that would be looked after, and he replied that it would. There is other evidence, but we believe the foregoing shows that appellant waived actual physical delivery. Furthermore, under the following authorities, we think there was in fact a sufficient delivery. Section 1754 of the Civil Code as it stood at the time of the transaction in-

volved, read as follows: ''Personal property sold is deliverable at the place where it is at the time of the sale, or agreement to sell. . . . '' The rule thus stated has been held to be applicable to a sale of corporate stock in *Mattingly* v. *Roach*, 84 Cal. 207 [23 Pac. 1117]. See, also, *Driscoll* v. *Driscoll*, 143 Cal. 528 [77 Pac. 471]; *Visher* v. *Webster*, 13 Cal. 58. There was a sufficient delivery of the stock.

Plaintiff made a motion for the entry of a different judgment under the provision of section 663 of the Code of Civil Procedure, but, from what we have already said, such a motion was properly denied.

■ Appellant also calls our attention to a decision of the Supreme Court of the State of Nevada, entitled John L. Russell and another against Oren Ruffcorn and another, reported in 10 Pac. (2d) 632, which he claims is *res judicata* of the questions involved on this appeal. But an examination of the record before us shows that such claim is unsupported by pleading or proof. This was necessary in this character of action. (Sec. 456, Code Civ. Proc.; *Meredith* v. *Santa Clara Min. Assn.*, 56 Cal. 178; *Ex parte Von Vetsera*, 7 Cal. App. 136 [93 Pac. 1036]; *Simmons* v. *Threshour*, 118 Cal. 100 [50 Pac. 312].) All that we have before us on this subject is a supplemental brief by appellant referring to the cited case, and also a third amended complaint in that action, and a certified copy of the judgment offered *ex parte*, and also offering to furnish us such additional records of the Nevada case as we may desire to consider the subject. We are of the opinion that in the absence of a proper record presented to the trial court, such decision is only entitled to consideration as an authority on questions of law. A careful reading of the cited case discloses that the action was brought for the purpose of canceling the deed to the real estate which was conveyed by appellant Russell to the respondent Oren Ruffcorn, as a part consideration for the stock sold by said Ruffcorn to Russell under the terms of the contract of February 5, 1926. The relief was granted upon the ground that in making the sale the agreement was void because it violated the terms of the permit issued by the Corporation Commissioner of California to the corporation to sell its treasury stock in California. However, in reaching such conclusion no mention is made in the decision of the revocation of the

permit above referred to, and in that respect, as heretofore set out, there is a vital distinction.

In the case at bar the trial court also found upon the evidence that appellant not only waived delivery of the certificates of stock, but we have held that under the evidence adduced in this case there was a sufficient delivery, while in the cited case the court held that it was the duty of Oren Ruffcorn to have made delivery, which he failed to do, and therefore there was no consideration passed to appellant. Under such circumstances we do not consider the case as authority here. We have examined the entire record with care and have been unable to discover any error which under the law would warrant us in disturbing the judgment.

The judgment is affirmed.

Plummer, Acting P. J., and Thompson, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 21, 1933, and the following opinion then rendered thereon:

THE COURT.—In denying the petition for a transfer of this cause to this court after decision by the District Court of Appeal we withhold approval of that portion of the opinion which declares that the revocation of the permit automatically released the impounded stock. However, under the facts and findings recited by the District Court of Appeal, there can be no doubt but that the plaintiff was equally intent with defendants in his determination to obtain the stock without regard to and in defiance of the order impounding the stock. Hence the doctrine of *Domenigoni* v. *Imperial Live Stock & Mortgage Co.*, 189 Cal. 467 [209 Pac. 36], concludes the argument of petitioner here. Petition for hearing denied.