[Civ. No. 25039.   First Dist., Div. Two.   Dec. 18, 1968.]

WILLIAM B. ADDIEGO et al., Plaintiffs and Respondents, v. RICHARD HILL et al., Defendants and Appellants.

Johnson, Harmon & Johnson, J. Edward Johnson, W. Glenn Harmon and Robert H. Johnson for Defendants and Appellants.

Dinkelspiel & Dinkelspiel and Alan A. Dougherty for Plaintiffs and Respondents.

TAYLOR, J.—Defendants appeal from a judgment decreeing specific performance of a written agreement to sell their controlling shares of stock in a closed corporation to plaintiffs, and from a post-judgment injunction.[1] They contend that: 1) the agreement enforced by the court violates the stat-

---

[1]The notice of appeal specifies that the appeal is also from the order denying their motion for a new trial. As such order is nonappealable, this purported appeal must be dismissed (*Rodriguez* v. *Barnett*, 52 Cal.2d 154 [338 P.2d 907]; Code Civ. Proc., § 963). The order, however, is reviewable on appeal from the judgment (*Lewis & Queen* v. *N. M. Ball Sons*, 48 Cal.2d 141 [308 P.2d 713]).

ute of frauds; 2) plaintiffs did not exercise their preemptive rights in time; 3) the trial court erred in the exclusion of certain evidence; 4) specific performance cannot be had because title to the stock had passed to a third party; and 5) the trial court abused its discretion in granting the post-judgment injunction.

Viewing the record most strongly in favor of the judgment, the following facts appear. The parties were the incorporators and owners of all of the 12,000 shares of stock of the Bahl Corporation; plaintiffs owned 5,000 shares and defendants the remaining 7,000 shares. On or about October 20, 1956, the parties executed an agreement, which provided, so far as pertinent, as follows: "WHEREAS, each of the undersigned is desirous that ownership of said stocks and bonds shall be limited insofar as is practicable to the undersigned parties;

· "Now, THEREFORE, each party to this agreement, in consideration of the promise of each other party to this agreement, does promise each other said party as follows:

"Before he sells, pledges, or otherwise hypothecates any presently owned or later acquired stocks or bonds, or other interest in said corporation, he will first offer to sell, pledge or hypothecate said stocks or bonds, or other interest in writing, to each of the undersigned on the same terms, said offer to continue for a period of 30 days.

"In any such event, should more than one of the undersigned be desirous of purchasing said stocks or bonds, the buying rights of each undersigned shall be that portion of such offered stocks or bonds as will enable each of the undersigned to maintain the same proportionate ownership of said corporation as exists at the time of the signing of this agreement."

On January 30, 1962, plaintiffs received from defendants the following letter: "Please accept this letter as notice, pursuant to our agreement for the purchase and sale of Bahl Corporation stock, that Richard Hill and Albert Bindi are presently executing an agreement to sell all of their stock in Bahl Corporation for a total of $125,000.00 payable as follows:

"$20,000.00 payable one year from date hereof, bearing interest at 6% per annum, said $20,000.00 to be secured by trust deed on real property;

"Balance of $105,000.00 to bear interest at 10% per annum, secured by first deed of trust on real property having a present value of $175,000.00.

"This notice is given to you to enable you to meet the terms of said sale, if you choose to do so under the terms of our agreement.

"In the event you have not effected an agreement to purchase on these terms within thirty (30) days from date hereof, the undersigned will conclude the transaction."

On February 13, 1962, plaintiffs wrote to defendants a letter requesting further information, as set forth below.[2] As plaintiffs received no answer to this letter, on February 23, 1962. they again wrote to defendants stating: "We are still waiting for a reply to our letter of February 13, 1962. We are definitely interested in purchasing either Mr. Hill's stock or Mr. Bindi's stock or both; but, we insist on knowing the terms of purchase of each stock separately."

Thereafter, on or about March 6, 1962, plaintiffs received from defendants by manual delivery a copy of a letter dated January 30, set forth below,[3] setting forth the precise terms of Mr. Johnson's offer to defendants.

Two days later, on March 8, 1962, plaintiffs, who now had sufficient information concerning the offer from Mr. Johnson, wrote to defendants as follows: "We hereby accept your offer to sell 7,000 shares of your stock of Bahl Corporation.

"That attached hereto, marked Exhibit 'A', and by this reference made a part hereof, is a photostat of a letter from J. Cyril Johnson, which sets forth the terms of your offer and our acceptance thereof. The one exception thereto is that we offer cash in the amount of $105,000.00 in lieu of the equity in the real property therein mentioned.

---

[2]"This letter will acknowledge receipt of your letter of January 30, 1962.

"We may be interested in buying either the share of Richard Hill, or of Albert Bindi, or both. Please make a separate offer for each.

"In addition, please furnish us with a copy of your agreement relating to the proposed sale."

[3]"Based upon your representation to me that you together own 7,000 shares of Bahl Corporation which is a 58% interest therein, and that said corporation is in good standing in all respects, and that its only obligations are for unsettled income tax liabilities as shown on the statement you have supplied me, I hereby offer to purchase your shares and to pay you therefor the sum of $125,000, minus 58% of the tax liability as shown on the corporation statement submitted to me; the said purchase price to be paid as follows:

"I will transfer to you my title in the undertaking parlor situated on College Avenue and El Camino Real in Palo Alto, for $170,000 minus the outstanding loan as of the time this transaction closes; the value of my equity as of this date is approximately $105,000. For the balance of the purchase price I will give you my note payable in two years, bearing 6% interest payable semiannually.

"This offer shall be considered as terminated unless accepted by you in writing within forty-five (45) days from date."

"Further, we are prepared to pay the price therefor as soon as the shares of stock can be delivered." At the same time, they enclosed a copy of an agreement to sell the shares signed by plaintiffs.

On Saturday, March 17, plaintiffs received the following letter from defendants dated March 15, 1962: "Your letter of March 8, 1962, purporting to 'accept' our offer of January 30, 1962, to sell to you our stock in Bahl Corporation is hereby rejected by us. It was not received within the time fixed by the agreement between us and is too late." Thereafter, plaintiffs learned that defendants had received the necessary written permission from the Corporations Commissioner to sell their shares to Mr. Johnson. On Monday, March 19, 1962, plaintiffs filed this action and obtained a preliminary injunction which was delivered to the escrow holder of the Bahl Corporation stock.

The trial court found that defendants had not sold their 7,000 shares of outstanding stock to Mr. Johnson prior to the commencement of this action; that plaintiffs made a timely acceptance pursuant to the terms of the preemption agreement of October 20, 1956; and that on March 8, 1962, the parties entered into a valid written contract for the sale of defendants' 7,000 shares to plaintiffs.

The court further found that defendants' shares of stock represented the controlling interest of Bahl Corporation; that the shares of stock of this corporation were of uncertain and unknown value and could not be purchased in the open market; that the principal asset of the corporation was certain real property located in the City of Mountain View and that if defendants were not required to deliver their shares to plaintiffs, plaintiffs would suffer a great and irreparable loss for which they have no adequate remedy at law. The court further found that the action was not barred by the applicable statute of frauds (Uniform Com. Code, § 8319, subd. (1)(a); Code Civ. Proc., § 1973a); that plaintiffs performed the conditions required by the preemption agreement and made an unqualified acceptance of the terms offered to the third party within the 30-day limit specified in the preemption agreement, and that the acceptance by plaintiffs did not vary from the offer made to them by defendants.[4]

---

[4]The legal aspects of this question were determined by this court on the prior appeal (*Addiego* v. *Hill*, 238 Cal.App.2d 842 [48 Cal.Rptr. 240]). In the prior appeal, we reversed a judgment of dismissal entered after a demurrer to plaintiffs' third amended complaint on the ground

The court then concluded that plaintiffs were entitled to a judgment permanently enjoining defendants from selling their shares in the Bahl Corporation and that on payment of the proper sum, defendants were to deliver their shares to plaintiffs. This judgment was signed on April 7, 1967, and filed on April 10, 1967. Thereafter, the court denied defendants' motion for a new trial. Upon learning that after entry of the judgment defendants had on April 24, 1967, held a meeting of the board of directors of the corporation and caused a dividend to be declared over the objection of plaintiffs, the court issued a post-judgment injunction restraining defendants from all activities in relation to the corporation; to preserve the status quo until the judgment became final.

Defendants first argue that the agreement enforced by the court was contrary to the statute of frauds,[5] as there was no writing subscribed by them evidencing any agreement to sell their shares to plaintiffs. This contention is patently without merit.

It has been held that if all the writings adduced to establish the contract, when viewed together in the light of the conditions and circumstances of the parties at the time they were written show unmistakably that they relate to the same matter and constitute several parts of one connected transaction, so that there can be no other reasonable conclusion from the evidence thus afforded than that they were written with reference to those concurrent or preceding, there is such a reference of one to the other as satisfies the rule, although there is no reference in express terms; and parole evidence is admissible to show the circumstances under which the transaction occurred and to connect the several papers constituting the contract between the parties. The rule is one founded in reason; and when, as practical men, we look at the writings, and

that the implied covenant doctrine required us to hold that plaintiffs' offer of cash in lieu of the equity in a specific parcel of real property offered by the third party constituted a proper acceptance.

[5]In 1962, the applicable provision (Code Civ. Proc., § 1973a, subd. 1) read as follows: "A contract to sell or a sale of any goods or choses in action of the value of five hundred dollars or upwards shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged, or his agent in that behalf." This statute and the then identical provisions of Civil Code sections 1624a, subdivision (1) and 1724, subdivision (1), were repealed by Statutes 1963, chapter 819, and a somewhat liberalized statute of frauds is now provided for in section 2201 of the new Commercial Code, effective January 1, 1965.

see, inhering in them, evidence which entirely satisfies the mind that they all relate to one general transaction, there is no reason why they should not be so considered. There is in such case a direct reference of the one to the other within the meaning of the law (*Searles* v. *Gonzalez*, 191 Cal. 426, 432 [216 P. 1003, 28 A.L.R. 78] ; *Goodman* v. *Community Sav. & Loan Assn.*, 246 Cal.App.2d 13, 22 [54 Cal.Rptr. 456] ; *Karl* v. *JeBien*, 231 Cal.App.2d 769, 772 [42 Cal.Rptr. 461] ; *Albion Lbr. Co.* v. *Lowell*, 20 Cal.App. 782 [130 P. 858, 864] ).

In the instant case, there are several documents relating to one general transaction. The agreement of October 20, 1956, spells out the obligations of the parties to communicate offers from outsiders to each other. Defendants' letter of January 30, 1962, written pursuant thereto and subscribed by defendants, when read together with the agreement, clearly constitutes an offer which was finalized and made sufficiently specific only by defendants' manumission of Johnson's letter on March 6. On acceptance of this offer by plaintiffs, the contract between the parties for the sale of the shares was completed. Defendants' letter of March 15 rejecting the acceptance further confirms the transaction between the parties. Here, all of the correspondence between the parties, when considered togther, constituted a sufficient memorandum of the agreement.

We see no merit in defendants' contention that there was no evidence to sustain the court's finding that plaintiffs exercised their preemptive rights within 30 days after receiving notice pursuant to the terms of the agreement of October 20, 1956. In view of the generality in the terms of sale contained in defendants' notice of January 30, it was reasonable for plaintiffs to request the precise terms they were called upon to meet. These were furnished them by defendants on March 6, in the form of Johnson's offering letter. The specific terms contained therein clearly illustrate the inadequacy of the initial notice of January 30. Plaintiffs had a right under the preemption agreement to be given notice with sufficient specificity upon which to base an acceptance. The transmission of the Johnson letter on March 6 afforded the necessary details of defendants' proposed sale and completed the notice required. Thus, the evidence supports the finding that plaintiffs' acceptance on March 8 was timely.

Defendants contend that plaintiffs' acceptance of March 8 varied from the terms of defendants' offer. As indicated above, the trial court was justified in finding that the

specific terms of the offer were contained in the Johnson letter as transmitted to plaintiffs by defendants. Plaintiffs met all of the conditions of the Johnson letter with the exception of their substitution of the cash payment in lieu of the $105,000 equity in real property. On the prior appeal of this case, we found an implied covenant in the preemption agreement which would permit such a variance. It is significant that defendants' letter of March 15 did not question the terms of plaintiffs' acceptance, but rejected it only on the basis of its late receipt.

Defendants next argue that the trial court erred in disregarding certain evidence relating to the actual cash value of Johnson's equity in his mortuary. Defendants introduced this evidence at the trial to support their position that the final and acceptable offer from Johnson, as spelled out in their March 15 agreement with him, contained a larger total consideration than that in Johnson's letter of January 30. However, since the terms of Johnson's final offer to defendants were never communicated to plaintiffs, any evidence relating thereto was irrelevant. It is undisputed that all of the terms of the acceptance by plaintiffs were identical to the terms offered in Johnson's transmitted letter of January 30, except the substitution of cash in lieu of the *stated value* of Johnson's equity in the mortuary. As noted above, this variance was held permissible in the prior appeal. The only issue before the trial court related to the timeliness and propriety of plaintiffs' acceptance of defendants' finalized offer contained in Johnson's letter of January 30.

Defendants' next argument that specific performance was impossible because title to their shares of stock had already passed to Johnson, is also without merit. Corporations Code section 26100 provides: "Every security of its own issue sold or issued by any company without a permit of the commissioner then in effect authorizing the issuance or sale of the security is void. Every security of its own issue sold or issued by a company with the authorization of the commissioner but which has been sold or issued in nonconformity with any provision in the permit authorizing the issuance or sale of the security is void."

The stock of the corporation in the instant case had been escrowed pursuant to the permit issued by the Corporations Commissioner. The permit expressly provides that the transfer of the stock is not complete until the escrow holder's receipt has been filed with the commission. The regulations issued by the Corporations Commissioner impose the same conditions on

the transfer of escrowed shares of stock as are imposed on newly issued shares of stock. Thus, the permit requires that not only must the receipt be issued by the escrow holder but the receipt must be filed by the escrow holder with the commissioner. The uncontroverted evidence here indicates that the escrow holder was informed of the action between the parties and served with the preliminary injunction and, therefore, did nothing to further the purported transfer from defendants to Mr. Johnson. The escrow holder after receipt of the preliminary injunction in the instant case retained both the old and new shares. He never cancelled the old shares and did not execute or issue a receipt for the new shares. *Russell* v. *Ruffcorn,* 132 Cal.App. 215 [22 P.2d 597], cited by defendants, is not pertinent, as therein the shares of stock impounded were released from the escrow upon the revocation of the permit and the owner was free to sell. There was also evidence indicating that delivery had been waived.

In reviewing the merits of the court's denial of the defense motion for a new trial, we find no abuse of discretion.

Finally, we turn to defendants' contention that the trial court erred in issuing its post-judgment injunction restraining defendants from all activities in connection with the corporation. This contention is likewise without merit. As indicated above, after the entry and service of the judgment in favor of plaintiffs in the instant matter on April 10, defendants called a meeting of the board of directors for 8:30 a.m. on April 17, 1967. This notice was not delivered to plaintiff Addiego until after the time scheduled for the meeting. The meeting was then postponed until April 24, 1967. At that time, over the objection of plaintiffs, defendants declared dividends. As defendants owned the controlling shares in the corporation, they could easily have drained all of the cash out of the corporation pending the appeal. Certainly, the trial court had authority to take whatever steps were necessary to preserve the corporation and its assets during the pendency of this appeal (Code Civ. Proc., § 564, subd. 4). In the instant case, plaintiffs first moved for an appointment of a receiver which also would have been proper under the circumstances (*Sibert* v. *Shaver,* 113 Cal.App.2d 19 [247 P.2d 609]). The court, however, decided that a receiver was not necessary as the shares of stock were already in the hands of an escrow holder. Therefore, the court entered its order restraining defendants from any further activity with respect to the corporation in order to preserve it. This action, under the

circumstances, was entirely proper and in no way constitutes an abuse of discretion.

The judgment and subsequent restraining order are affirmed; the purported appeal from the order denying a new trial is dismissed.

Shoemaker, P. J., and Agee, J., concurred.

A petition for a rehearing was denied January 17, 1969, and appellants' petition for a hearing by the Supreme Court was denied February 13, 1969.