389 A.2d 146

**H. James CONAWAY, Jr., Receiver of First State Life Insurance Company of America, Inc., Appellant,**

v.

**20TH CENTURY CORPORATION.**

Superior Court of Pennsylvania.

Argued Sept. 20, 1976.
Decided July 12, 1978.

2

Bari Boyer, DuBois, with him Bruce E. Cooper, Harrisburg, for appellant.

Clyde W. McIntyre, Harrisburg, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge:

The receiver of First State Life Insurance Company of America, Inc., (Insurance Company), the appellant herein, brought this assumpsit action against 20th Century Corporation, the appellee herein. The action seeks to recover damages for the breach of an alleged oral contract between the parent company of the Insurance Company, First State Life Insurance Investors, Inc., (Investors Corporation) and appellee. The alleged oral contract involved, according to the appellant's complaint, a promise by the appellee to purchase 500,000 shares of the Insurance Company for the sum of $250,000. At the time the alleged oral contract was entered, the Insurance Company was a mere corporate shell organized as a subsidiary of the Investors Corporation for the purpose of selling life insurance in Delaware.

Although the history of the Investors Corporation and the birth of the Insurance Company were sometimes stormy and at all times complicated, the relevant evidentiary factors, as framed in the pleadings include a May 12, 1967, letter written by the Executive Vice President of appellee to the Insurance Commissioner of Delaware, a June 30, 1967, letter written by the President of appellee to an attorney closely involved in the affairs of the Investors Corporation, and a March 15, 1969, affidavit sworn to by the President of appellee.

The above writings were attached to appellant's Petition for Reconsideration filed November 7, 1975, after the court below had sustained appellee's demurrer on the grounds that appellant had not demonstrated compliance with the statute of frauds.

Initially we note that procedurally the appellee's demurrer was improper. *Duffee v. Judson,* 251 Pa.Super. 406, 380 A.2d 843 (1977). However, since this objection has not been raised, we may not consider it on this appeal.

4

■ Further, although the lower court sustained appellee's demurrer initially on September 29, 1975, and this appeal was not filed until April 15, 1976, we note that the lower court suggested and permitted this procedure. By memorandum accompanying the order of September 29, 1975, the court suggested, "If any writings in fact exist, the proper procedure would be to petition the court for reconsideration of the demurrer, attaching the writings." (R. 59a). Also, by order dated October 20, 1975, the lower court provided an additional 20 days from that date for the filing of the Petition for Reconsideration. The petition was in fact filed within that time on November 7, 1975. We deem this procedure to comply with Pa.R.A.P. 1701(b)(3). Accordingly, the time for filing the appeal began to run anew after the entry of the decision on reconsideration, which in this case occurred on March 19, 1976, when the Petition for Reconsideration was denied.

Turning to the merits of the argument, the applicable statute of frauds provides:

"A contract for the sale of securities is not enforceable by way of action or defense unless

(a) there is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price; or

(b) delivery of the security has been accepted or payment has been made but the contract is enforceable under this provision only to the extent of such delivery or payment; or

(c) within a reasonable time a writing in confirmation of the sale or purchase and sufficient against the sender under paragraph (a) has been received by the party against whom enforcement is sought and he has failed to send written objection to its contents within ten days after its receipt; or

(d) the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court

that a contract was made for sale of a stated quantity of described securities at a defined or stated price." Uniform Commercial Code, Act of April 6, 1953, P.L. 3, § 8–319, *reenacted* October 2, 1959, P.L. 1023, § 8 (12A P.S. § 8–319).

It is conceded by appellant that its pleadings and attached writings do not comply with (b) and (c) above and that those sections are inapplicable. Appellant does argue, however, that the bar of the statute of frauds is avoided by compliance with either (a) or (d) above. We conclude that, at this stage of the litigation, appellant has satisfied (a) above, and we therefore reverse the granting of the demurrer in the court below.

Chronologically, the three relevant writings referred to above are:

1. On May 12, 1967, the Executive Vice President of appellee wrote a letter to the Insurance Commissioner of Delaware outlining details of a plan for financing the Insurance Company. The purpose of the letter was to persuade the Commissioner to issue to the Insurance Company a Certificate of Authority to write life insurance in Delaware. The letter, in part, stated:

"[W]e propose to submit the following plan to the appropriate officers, directors and incorporators of the Holding Company [First State Investors] and the Life Company. 20th Century Corporation would invest $249,390.00 or $.50 a share in the Life Company in exchange for 498,780 shares of Common Stock of the Life Company. (R. 68a)."

2. On June 30, 1967, the President of appellee wrote to an attorney who was closely involved in the affairs of Investors Corporation, in part as follows:

"I assume you have mailed the notice of [sic] stockholders of the special meeting to act upon our offer. (R. 71a)."

3. In an affidavit dated March 15, 1969, the President of appellee swore, among other things, that:

"6. 20th Century *was interested in this proposal* [to help finance First State Life] and submitted a plan to Commis-

sioner Short, the Insurance Commissioner of Delaware, for his approval. A copy of said plan is attached hereto as Exhibit 1[.]

7. While this plan was never approved or disapproved by Commissioner Short, it was approved by the stockholders of Investors and by the United States District Court for the District of Delaware[.]" (R. 65a).

We believe the precedent of *Harry Rubin & Sons, Inc. v. Consolidated Pipe Company of America, Inc.,* 396 Pa. 506, 153 A.2d 472 (1959), controls. There, in a procedural and factual situation remarkably similar to the case at bar, the Pennsylvania Supreme Court said:

"Under the statute of frauds as revised in the Code 'All that is required is that the writing afford a basis for beliving [sic] that the offered oral evidence rests on a real transaction.' Its object is the elimination of certain formalistic requirements adherence to which often resulted in injustice, rather than the prevention of fraud. The present memoranda fulfill the requirement of affording a belief that the oral contracts rested on a real transaction and the court below erred in holding otherwise. Nor are Consolidated-Lustro harmed by such a determination since Rubin-Arandell must still sustain the burden of persuading the trier of fact that the contracts were in fact made orally prior to the written confirmation." *Id.,* 396 Pa. at 512, 153 A.2d at 476 (footnotes omitted).

 The three proffered writings, of course, do not completely spell out a contract. There is no requirement, at the pleading stage, that they must. It is enough that the proffered writings afford a *basis* for believing that the offered oral evidence rests on a contract actually made. The trier of fact must, under these circumstances, make the ultimate determination of the fact,[1] with appellant charged with the burden of proof.

1. Both the lower court and Judge Spaeth's dissent see this issue solely as a matter of law. We do not view it as such.

The proffered writings of May 12, 1967, June 30, 1967, and March 15, 1969, certainly form a reasonable basis, at the demurrer stage, for a determination after trial by the trier of fact as to whether a contract was actually made.

Since appellee's preliminary objections raised five grounds in addition to the demurrer, and the lower court, relying upon its sustaining of the demurrer, declined to rule upon the various other objections at that time, we reverse both the order of September 29, 1975, and the order of March 19, 1976, and remand for further proceedings consistent with this opinion.

SPAETH, J., files a dissenting opinion in which VAN der VOORT, J., joins.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

SPAETH, Judge, dissenting:

I do not agree that the writings submitted by appellant, whether taken alone or together, satisfy the second requirement of § 8–319(a) or (d), namely, that a contract was made.

On May 12, 1967, the Executive Vice President of 20th Century wrote a letter to the Insurance Commissioner of Delaware outlining details of a plan for financing First State Life. The purpose of the letter was to persuade the Commissioner to issue to First State Life a certificate of authority to write life insurance in Delaware. The letter stated:

> [W]e propose to submit the following plan to the appropriate officers, directors and incorporators of the Holding Company [First State Investors] and the Life Company. 20th Century Corporation would invest $249,390.00 or $.50 a share in the Life Company in exchange for 498,780 shares of Common Stock of the Life Company.
>
> R. 68a.

This writing does not show that a contract had been made; it looks only to the possibility of a contract in the future.

*See In re Flying W Airways, Inc.*, 341 F.Supp. 26, 72 (E.D.Pa.1972).[1]

On June 30, 1967, the President of 20th Century wrote to an attorney who was closely involved in the affairs of First State Investors, as follows:

> I assume you have mailed the notice of *[sic]* stockholders of the special meeting to act upon our offer.
>
> R. 71a.

This writing also looks only to a future contract.

In an affidavit[2] dated March 15, 1969, the President of 20th Century swore:

> 20th Century was interested in this proposal [to help finance First State Life] and submitted a plan to Commissioner Short, the Insurance Commissioner of Delaware, for his approval. A copy of said plan is attached hereto as Exhibit 1[.] While this plan was never approved or disapproved by Commissioner Short, it was approved by the stockholders of Investors and by the United States District Court for Delaware[.]
>
> R. 65a.

This writing alone cannot show that a contract was made, for it says only that a plan was presented to and accepted by the stockholders of First State Investors. It cannot be ascertained from this writing whether the presentation and acceptance of the plan were the equivalent of an offer and acceptance, or whether they were instead steps preliminary to an offer and acceptance. It may be that 20th Century and the officers and directors of First State Investors had indeed made a contract that only needed to be ratified by the stockholders of First State Investors. However, it may

---

1. This case involved construction of the Statute of Frauds applicable to sale of goods 12A P.S. § 2–201. Such a case is nevertheless instructive in a § 8–319 case, for the purpose of § 8–319 was "[t]o conform the statute of frauds provisions with regard to securities to the policy of the provisions on the Article on Sales (Article 2) on sale of goods." Comment, 12A P.S. § 8–319.

2. The affidavit was for use in court proceedings in Delaware in a suit by First State Investors against 20th Century to compel specific performance of the contract alleged here.

also be that before the officers and directors of First State Investors could proceed to make a contract with 20th Century they needed the consent of the stockholders. It may also be that 20th Century wanted to know if its plan would be acceptable to the stockholders before it took the trouble to make up final terms and present them in a formal offer. To decide among these possibilities is to speculate on whether or not a contract was made—something the Statute of Frauds is intended to forbid.

Appellant argues that the three writings taken together demonstrate that a contract was made. "[S]everal writings may be considered in combination and the Statute of Frauds is satisfied if the writings so conjoined meet the requirements of the Code." Anderson, Uniform Commercial Code, § 2–201:51 at 284 (2d ed. 1970). *See also Oswald v. Allen,* 417 F.2d 43, 46 (2d Cir. 1969); *In re Flying W Airways, Inc., supra.* However, even when considered in combination, the first two writings show only that a contract was contemplated, and that steps were being taken towards agreement on it; the third shows only that some step—one cannot say exactly what step—was taken. *Cf.* cases cited by appellant, all of which turn on writings that do show a contract, *e. g., Cooper v. Vitraco, Inc.,* 320 F.Supp. 239 (D.C. Virgin Islands 1970) (corporate minutes signed by incorporators of corporate defendant indicating number of shares and purchase price of stock to be sold to plaintiff); *Tripp v. Pay'n Pak Stores, Inc.,* 268 Ore. 1, 518 P.2d 1298 (1974) (defendant's corporate minutes, signed by defendant, recited prior oral agreement and confirmed price and quantity terms); *Cohn v. Fisher,* 118 N.J.Super. 286, 287 A.2d 222 (1972) (deposit check, signed by party to be charged, had quantity and price stated on face together with description of merchandise to be purchased); *Jinright v. Russel,* 123 Ga.App. 706, 182 S.E.2d 328 (1971) (check signed by defendant with notation, "for binder on a store"); *Addiego v. Hill,* 268 Cal.App.2d 280, 73 Cal.Rptr. 901 (1968) (writings contained the specific terms of the agreement and were specifically accepted by plaintiff in a second letter).

Appellant cites several cases, in particular *Harry Rubin & Sons, Inc. v. Consolidated Pipe Company of America, Inc.,* 396 Pa. 506, 153 A.2d 472 (1959), for the principle that under the Statute of Frauds as revised in the Code (*i. e.,* § 2–201 and, by implication, § 8–319, *see* note 2 *supra*), "All that is required is that the writing afford a basis for believing that the offered oral evidence rests on a real transaction." Comment, 12A P.S. § 2–201. There is no question that the writings offered demonstrate that business was really being transacted between the parties. However, "transaction" must be understood to refer to "contractual transaction"—*i. e.,* a contract actually made; otherwise, written evidence of preliminary contractual negotiations would suffice to overcome the Statute. So understood, the principle cited by appellant is not enough to save appellant's case.

I would affirm.

VAN der VOORT, J., joins in this Opinion.