AMDAHL CORPORATION,
Plaintiff–Appellant,

v.

PROFIT FREIGHT SYSTEMS, INC., a corporation; Lep International Inc.; Lep Profit International, Inc.; Atlas Consolidated Container, Defendants–Appellees.

No. 93–17011.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 15, 1994.

Sept. 8, 1995.

while redrafting the traditional locality analysis,

recognized the inquiry of *Executive Jet.*

Stanley L. Gibson, Adam B. King, Derby, Cook, Quinby & Tweedt, San Francisco, CA, for plaintiff-appellant.

David C. Phillips, Catherine E. Woodward, Goldstein & Phillips, San Francisco, CA, for defendants-appellees.

Before: Jerome Farris, Robert Boochever, and Melvin Brunetti, Circuit Judges.

BRUNETTI, Circuit Judge:

This appeal involves a suit to recover for damage sustained by a laser wire bonder during overseas transport. Plaintiff-appellant Amdahl Corporation (Amdahl) appeals an order of the Northern District of California granting partial summary judgment to defendants-appellees Lep Profit International (Lep) and Atlas Consolidated Container, Inc. (Atlas). The district court determined that 46 U.S.C.App. § 1304(5) limited the liability of Lep and Atlas to $500 for damage to Amdahl's package. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm the order of summary judgment as to Atlas but we reverse the order of summary judgment as to Lep.

## I.

Amdahl contracted with Lep to ship a laser wire bonder from Sunnyvale, California to Dublin, Ireland. That contract was in the form of a "Shipper's Letter of Instructions." On the front page of that contract, Amdahl authorized Lep to "sign and accept [in Amdahl's name] any documents relating to said shipment and forward this shipment in accordance with the conditions of carriage and the tariffs of the carriers employed." On the reverse of the contract Lep and Amdahl specifically agreed to limit Lep's liability to twenty dollars per kilogram.[1]

Three weeks later, on behalf of Amdahl, Lep arranged for Atlas to carry the laser bonder by sea from New York to Dublin, Ireland. The bill of lading between Amdahl and Atlas stated that Atlas' liability was limited to $500 per package.[2] That contract specifically listed only New York and Dublin as ports of call.[3]

Atlas did not carry the laser bonder directly to port in Dublin, Ireland. At Antwerp, Belgium, Atlas unloaded the laser bonder and reloaded it upon a different vessel bound for Dublin. When the laser bonder arrived in Dublin, it had sustained over $100,000 damage. Amdahl brought this action to recover damages.

Lep and Atlas moved for partial summary judgment, asserting that 46 U.S.C.App. § 1304(5) limited their liability to $500 for

---

1. Paragraph 4 of the agreement between Amdahl and Lep stated in pertinent part:

   *Limits of Liability* The charges for carriage hereunder have been in part based upon either the value declared by the shipper or, in the absence of such declared value, the Forwarder's limitation of liability. The liability of the Forwarder shall in no event exceed the shipper's declared value stated on the face of the waybill, and, in the absence of such declared value and payment of the additional charges for such excess valuation, the liability of the Forwarder shall not exceed the sum of (i) the amount determined by multiplying the weight of that part of the shipment which is lost, destroyed or damaged by the following applicable amounts: (A) for all international services U.S. $9.07 per pound (U.S. $20.00 per kilogram)....

2. Paragraph 29 of the contract between Amdahl and Atlas states in pertinent part:

   The Carrier's liability, if any, shall be determined on the basis of a value of $500 per package or per shipping unit or pro rata in case of partial loss or damage, unless the nature of the goods and a valuation higher than $500 per package or per shipping unit shall have been declared by the shipper before shipment and inserted in the Bill of Lading, and extra freight paid if required.

3. On the reverse of the contract in Paragraph 12, the parties agreed that "[t]he scope of the voyage herein contracted for shall include usual or customary or advertised ports of call whether named in the contract or not...."

the package. The district court granted partial summary judgment for Lep and Atlas. The parties agreed to have stipulated judgment entered against Lep and Atlas in the amount of $500 and this appeal followed.

## II.

■ We first turn to the grant of partial summary judgment on Lep's liability. We review grants of partial summary judgment de novo. *Kyle Ry. v. Pacific Admin. Serv.*, 990 F.2d 513, 517 (9th Cir.1993). Viewing the evidence in the light most favorable to the nonmoving party, we determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir.1994).

The Carriage of Goods by Sea Act (COGSA) limits a carrier's liability to $500 per package unless the nature and value of the shipped goods is declared by the shipper and inserted into the bill of lading. 46 U.S.C.App. § 1304(5). If Lep had recited section 1304(5) or language to the same effect in its Letter of Instructions with Amdahl, Lep would have made a prima facie case that Amdahl had been given a fair opportunity to choose a different liability clause, and thus that the $500 limitation should have applied. *See Mori Seiki USA, Inc. v. M.V. Alligator Triumph*, 990 F.2d 444, 448–49 (9th Cir.1993).

■ Lep and Amdahl's bill of lading does not recite section 1304(5). Instead, paragraph 4 limits Lep's liability to $20 per kilogram. We conclude that this clause, not COGSA's default limitation, determines Lep's liability.

Our conclusion is supported by the Third Circuit's holding in *SPM Corp. v. M/V Ming Moon*, 965 F.2d 1297 (3d Cir.1992). In *SPM*, one paragraph of the pertinent bill of lading essentially incorporated COGSA's limitations, but another recited a $2 per kilogram limitation. *Id.* at 1301. The Third Circuit concluded that the latter paragraph controlled the carrier's liability. *Id.* at 1301–02. If a specific liability provision overrides a reference to the COGSA limitation when an agreement recites both, there is no question that such a provision—in this case, the $20 per kilogram limitation—governs when an agreement makes no reference to COGSA.

Lep seeks to invoke COGSA to limit its liability to $500 by virtue of the COGSA limitation recited in *Atlas'* bill of lading. Lep argues that Amdahl authorized Lep to forward the laser bonder in accordance with the conditions of carriage of the carriers employed. According to Lep, "the conditions set forth in Atlas' bill of lading are expressly incorporated into Lep's contract with Amdahl."

We reject Lep's argument. The liability limitation in Lep and Amdahl's Letter of Instructions governs Lep's liability. While the contract did provide Lep the authority to act as its agent in forwarding the shipment, the contract limited the scope of Lep's agency. Paragraph 2 of the contract states in pertinent part that "[n]o agent, servant, or representative of the Forwarder has authority to alter, modify or waive any provision of the contract." Even if Lep did have the power to impose terms on Amdahl, Lep did not have the power to impose a liability provision conflicting with the provision already established between Amdahl and Lep.

Lep substituted the $20 per kilogram liability provision for the $500 COGSA limitation provision and so cannot benefit from that lower COGSA provision. Accordingly, the district court erred in granting partial summary judgment for Lep.[4]

## III.

We now turn to the partial grant of summary judgment on Atlas' liability. Amdahl argues that a statutory exception operates to deprive Atlas of the benefit of that limitation. The exception applies if the carrier commits

---

4. We need not reach the issue of whether Lep was a common carrier because, regardless of whether Lep is a common carrier liable in full or a freight forwarder liable only for negligence in selecting a carrier, Lep did not give Amdahl fair opportunity to avoid the COGSA limitation. *See*

*Chicago, Milw., St. P. & Pac. R.R. v. Acme Fast Freight, Inc.*, 336 U.S. 465, 484, 69 S.Ct. 692, 701, 93 L.Ed. 817 (1948) (explaining bases of liability for freight forwarders and common carriers). For that reason, regardless of status, Lep cannot benefit from the COGSA limitation.

an "unreasonable deviation" from the contract of carriage. 46 U.S.C.App. § 1304(4). We have held that a "deviation is a 'serious departure from the contract of carriage,' exposing the cargo to 'unanticipated and additional risks.'" *Nemeth v. General S.S. Corp.*, 694 F.2d 609, 613 (9th Cir.1982) (citation omitted).

Atlas did not carry the laser bonder directly to port in Dublin, Ireland. At Antwerp, Belgium, Atlas unloaded the laser bonder and reloaded it upon a different vessel bound for Dublin. The bill of lading did not specifically state that the laser bonder would pass through Antwerp. Amdahl argues that Atlas' unloading the cargo at Antwerp establishes a prima facie case of deviation under 46 U.S.C.App. § 1304(4) and shifts the burden to Atlas to show that the deviation was reasonable. *See P & E Shipping Corp. v. Empresa Cubana Exportadora*, 335 F.2d 678, 680 (1st Cir.1964) (stating that once plaintiff shows that deviation has occurred, burden shifts to defendant to demonstrate that deviation was reasonable).

■ The Third Circuit recently addressed a similar situation in *SPM Corp.* In *SPM*, the carrier restowed the shipper's cargo at an intermediate port without indicating on the bill of lading that it would do so. *SPM*, 965 F.2d at 1299. The *SPM* court concluded that conduct customary in the maritime trade is not a deviation because a shipping contract ordinarily presumes that parties will follow such customs. *Id.* at 1304. Because intermediate port restowage was customary, no deviation occurred. *Id.* We agree with the reasoning of the Third Circuit in *SPM*. If a carrier follows a customary trade route, there can be no deviation, even if the bill of lading discloses only the location of terminal ports. *See also General Elec. Co. Int'l. v. S.S. Nancy Lykes*, 706 F.2d 80, 84 (2d Cir.), *cert. denied*, 464 U.S. 849, 104 S.Ct. 157, 78 L.Ed.2d 145 (1983) (defining route deviation

in terms of degree of departure from customary route, established and known to the shipping community).

■ In the instant case, the district court ordered partial summary judgment for Atlas, relying on the bill of lading's liberty clause.[5] However, we may affirm a correct decision on any grounds supported by the record. *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir.1984). Atlas introduced uncontroverted evidence, a declaration by an employee of Lep, that it is customary and known to the shipping community that shipments en route to Dublin travel first to another European port. Amdahl argues that the declaration was inadmissible because Lep produced a representative other than the declarant in response to Amdahl's Rule 30(b)(6) deposition notice. The district court found the declaration admissible. We agree.

If Amdahl felt that Lep did not properly respond to the deposition request, Amdahl could have moved the court to compel Lep to comply. *See Fed.R.Civ.P.* 37(a)(2) (providing explicit mechanism to compel 30(b)(6) designation). Alternatively, Amdahl could have requested that the district court delay the hearing until Amdahl deposed the declarant. *See Fed.R.Civ.P.* 56(f) (stating that, upon party's request, court may order continuance to permit party to take depositions). Amdahl pursued neither of these established avenues for recourse so it cannot now legitimately contest the admissibility of the declaration.

Because the uncontroverted facts show Atlas' stop in Antwerp was customary, there was no deviation and we need not analyze reasonableness. *See 2 Thomas J. Schoenbaum, Admiralty and Maritime Law* § 10–32, at 139 (2d ed. 1994) (stating that if deviation is established, next step is to determine whether deviation was reasonable). Atlas

---

5. The contract between Amdahl and Atlas contains a liberty clause, permitting stops at usual or customary ports whether named specifically in the contract or not. *See supra* note 3 (quoting text of liberty clause); 2 *Thomas J. Schoenbaum, Admiralty and Maritime Law* § 10–32, at 138 (2d ed. 1994) (discussing typical liberty clauses). The district court relied on the liberty clause to find that no deviation occurred. Amdahl argues

that the liberty clause is invalid because it is overbroad. *See General Elec. Co. Int'l.*, 706 F.2d at 84 (stating that although liberty clauses are broad in language they are limited in scope). Because we find that the stop in Antwerp was customary in the maritime trade and thus no deviation occurred, we need not review the validity of the liberty clause.

has carried its burden of showing that it was entitled to the $500 per package liability limitation enacted in 46 U.S.C.App. § 1304(5). Thus, partial summary judgment was appropriate as to Atlas.

## IV.

In conclusion, because Lep and Amdahl agreed to the $20 per kilogram limitation rather than COGSA's liability limitation, Lep cannot limit its liability to $500 per package. We reverse the district court's grant of partial summary judgment as to Lep. We affirm the grant of partial summary judgment as to Atlas because Atlas gave Amdahl fair opportunity to avoid COGSA's $500 liability limitation and Atlas did not deviate from the contracted-for voyage.

The stipulated judgment is AFFIRMED as to Atlas. The stipulated judgment is VACATED as to Lep, the order granting partial summary judgment to Lep is REVERSED, and the proceedings are REMANDED for further consideration consistent with this opinion.

AFFIRMED in part; VACATED in part; REVERSED in part; REMANDED in part.