ORACLE CORPORATION, a Delaware corporation, Plaintiff–Appellee,

v.

Pier Carlo FALOTTI, an individual, Defendant–Appellant.

No. 01–17316.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 5, 2002.

Filed Feb. 11, 2003.

Richard A. Johnston, Jonathan D. Rosenfeld, Hale & Dorr LLP, Boston, Massachusetts; E. Jeffrey Banchero, Marc N. Henschke, The Banchero Law Firm, San Francisco, California; for the defendant-appellant.

Ronald S. Cooper, Morgan D. Hodgson, Steptoe & Johnson LLP, Washington, D.C., for the plaintiff-appellee.

Jeffrey A. Berman, Sidley Austin Brown & Wood, Los Angeles, California, for Amicus Curiae the Employers Group.

Before: BERZON, TALLMAN, and CLIFTON, Circuit Judges.

TALLMAN, Circuit Judge.

Oracle Corporation terminated Pier Carlo Falotti, a former senior executive based in Switzerland, in May 2000. In the four months following his termination, Falotti was scheduled to vest his remaining stock options worth more than 85 million U.S. dollars. Oracle brought this action seeking a declaration that Falotti is neither entitled to vest these stock options nor to receive their value as damages. Falotti resisted and brought various counterclaims against Oracle. The district court ruled in favor of Oracle on cross-motions for summary judgment.

We have jurisdiction and affirm.

## I.

### A

Falotti had worked in Geneva, Switzerland, since 1973. In 1995, Oracle contacted Falotti—who at the time was an executive with AT & T—about a job offer. Nothing arose from this initial contact, but

talks resumed in 1996. Falotti eventually signed an offer letter from Oracle on July 10, 1996("July 1996 Letter Agreement").

Under the July 1996 Letter Agreement, Falotti agreed to work from Geneva as Oracle's Senior Vice President for Europe, the Middle East, and Africa.[1] With incentives, he earned one million U.S. dollars a year in salary. He was also promised that if he remained continuously employed, Oracle would grant him an option, over time and in specified periodic installments, to purchase an initial 600,000 shares of Oracle common stock. The July 1996 Letter Agreement also stated that following Falotti's acceptance, Oracle and Falotti would enter into an employment contract subject to Swiss law.

The July 1996 Letter Agreement was for an indefinite term, and Oracle could terminate Falotti with or without cause. Termination without cause, however, entitled Falotti to a severance package of one million dollars and accelerated vesting of 50% of the stock options described in the July 1996 Letter Agreement.

On August 29, 1996, Oracle and Falotti signed another letter agreement ("August 1996 Letter Agreement"). This agreement stated that Falotti's employment would be governed by the laws of Switzerland. The August 1996 Letter Agreement also said that Falotti's employment with Oracle "shall be subject to the terms of the attached Employee Agreement." Falotti signed the referenced Swiss law Employment Agreement.

A few days later, on September 10, 1996, Oracle and Falotti consummated another

letter agreement ("September 1996 Letter Agreement"). The September 1996 Letter Agreement states that if there is a conflict between the July 1996 Letter Agreement and Swiss law, the July 1996 Letter Agreement would control. The September 1996 Letter Agreement also states that "any notice payable for termination without cause payable under your Swiss Employment Agreement[2] shall be waived providing the payment due under the[July 1996 Letter Agreement] shall have been paid."

None of these later three agreements—the August 1996 Letter Agreement, the Employment Agreement, or the September 1996 Letter Agreement—make any reference to stock options.

During Falotti's employment, all stock-option grants were governed by Oracle's 1991 Long–Term Equity Incentive Plan. Oracle made individual grants under a Grant Agreement, and employees exercised their rights under an Exercise Notice Agreement. The Exercise Notice Agreement contains a California choice-of-law provision. Additionally, all three agreements—the Grant and Exercise Agreements as well as the Equity Incentive Plan (collectively the "Stock Option Agreement")—incorporate each other by reference.

The Stock Option Agreement states that an employee is not entitled to vest any remaining stock options once they "cease[ ] to be employed." Any dispute regarding the interpretation of a grant is reviewed by Oracle's Compensation Committee. The Compensation Committee's decision is binding on both Oracle and the employee.

---

1. Though technically Falotti worked for Oracle Switzerland, a subsidiary of Oracle Corporation, he reported to no one at Oracle Switzerland and instead reported directly to senior management at Oracle Corporation in California. Because it does not affect the analysis—save for one issue discussed in Section IV.C—this opinion will refer to both Oracle Switzerland and Oracle Corporation as "Oracle."

2. The phrase "notice payable" refers to Swiss law, which requires employers to pay employees for a certain period, *i.e.* a "notice period," after the employee is notified that they will be terminated.

In addition to the initial 600,000 shares due Falotti under the July 1996 Letter Agreement, Oracle issued Falotti more individual stock-option grants during the course of his employment. These grants were made periodically at the discretion of Oracle, and were governed by the Stock Option Agreement. Of significance here, between June 1, 2000, and September 30, 2000—the dates during which Falotti alleges he is entitled to vesting—Falotti was scheduled to vest another two million shares.

While Falotti was traveling to Italy on May 31, 2000, an Oracle human-resources representative called Falotti and informed him, on authority from Oracle CEO Larry Ellison, that Falotti was terminated immediately. Falotti called Ellison that night, and Ellison confirmed Falotti's termination. Falotti informed Ellison during this conversation that under Swiss law Falotti could not be fired because he was ill and unable to work. After May 31st, Falotti was neither paid a salary by Oracle nor was he given any further stock options. Thereafter, Falotti performed no services for Oracle.

On June 30, 2000, Oracle's Compensation Committee held a special meeting to determine when Falotti "ceased to be employed" for purposes of his stock-option grants. Outside counsel Theodore Rhodes attended the Compensation Committee meeting. Rhodes advised that the Compensation Committee had broad discretion under the Equity Incentive Plan to determine when an employee ceased to be employed and thus became ineligible to vest stock options. Rhodes also advised that

the Compensation Committee should make its decision according to the Equity Incentive Plan regardless of Swiss employment law. The Compensation Committee unanimously decided that Falotti ceased to be employed on May 31, 2000, and could not exercise any stock options after that date.

B

Three days after the Compensation Committee's meeting, Oracle filed a complaint in the United States District Court for the Northern District of California. The complaint sought declaratory relief regarding Oracle's rights and obligations under the various contracts with Falotti. Specifically, Oracle sought a declaration that Falotti could not exercise stock options that vested after May 31, 2000, and that he was not entitled to any stock-option damages in lieu of the unexercised options.

Falotti asserted eleven counterclaims. The district court dismissed some of the counterclaims, sparing only counterclaims for benefits under Swiss law, declaratory judgment, breach of written and oral contract, and promissory estoppel.

Oracle then moved for summary judgment on (1) its claim for declaratory relief, (2) Falotti's Swiss law claims to the extent they sought stock options or their equivalent value as damages, and (3) Falotti's oral contract and promissory estoppel claims. Falotti in turn sought summary judgment on his claim that he was entitled to vest stock options between May 31, 2000, and September 30, 2000. The district court granted summary judgment for Oracle and denied summary judgment for Falotti.[3] *Oracle Corp. v. Falotti,* 187 F.Supp.2d. 1184, 1186 (N.D.Cal.2001).[4]

---

3. To perfect his appeal, Falotti dismissed his remaining Swiss law claims for salary and benefits. The parties agreed, however, that Falotti could continue to pursue these claims in Switzerland.

4. We affirm the district court's grant of summary judgment to Oracle on Falotti's promissory estoppel and oral contract claims. *See Falotti,* 187 F.Supp.2d. at 1205–07. We adopt the district court's reasoning regarding

## II

We review grants of summary judgment de novo. *Amdahl Corp. v. Profit Freight Sys., Inc.*, 65 F.3d 144, 146(9th Cir.1995).

Before an employee can be terminated, Swiss law accords employees a notice period during which the employee is entitled to wages and benefits. Swiss Code of Obligations ("SCO") 335c. For an employee who has been with an employer for between two and nine years, the notice period is two months. *Id.* Additionally, Swiss law prohibits the termination of an employee while that employee is unable to work. SCO 336c.

The district court held that the severance provision in the July 1996 Letter Agreement precluded Falotti from receiving stock options or stock-option damages. *Falotti*, 187 F.Supp.2d at 1193. The district court reasoned that because the September 1996 Letter Agreement stated that the July 1996 Letter Agreement trumped the Swiss law Employment Agreement in the case of a conflict, the severance clause in the July 1996 Letter Agreement was the only entitlement remaining after May 31, 2000. *Id.*

The district court's analysis on this point is flawed because Falotti is not seeking stock options as part of a severance, but instead as part of damages incurred while he was still employed by Oracle under Swiss law. In other words, under Swiss law and thus the Employment Agreement, Falotti was not terminated until after the end of the applicable notice periods. *See* SCO 335c (describing termination as occurring *after* a notice period); SCO 336c (prohibiting termination *while* a person is

incapacitated); SCO 339b (stating that in certain circumstances severance must be paid *after* termination). Only after termination did the severance benefit accrue.

Furthermore, because the severance provision only applies after termination, there is no conflict between the severance provision and the notice periods that would cause the severance agreement to trump Swiss law as incorporated into the Employment Agreement. Oracle's attempt to label the severance provision as explicitly replacing the notice period is unpersuasive. By its terms, the waiver clause in the September 1996 Letter Agreement was only applicable if Oracle paid Falotti severance. Oracle did not pay the severance, and thus Falotti's notice-period rights remain intact. The severance provision was not an automatic waiver of notice-period rights, but a conditional one. Since Oracle did not meet the condition precedent for waiver, which was payment, Falotti maintained his rights under Swiss law. The district court therefore erred by ruling that the severance provision automatically foreclosed any stock options during the notice periods.

## III

Whether Falotti is entitled to vest stock options *or to stock option damages* is the crux of the case. Oracle seeks a declaratory judgment that it had no obligation to allow Falotti to vest any stock options after May 31, 2000. Falotti argues that certain provisions of Swiss law provide an employee damages—including stock options—if an employer does not honor the applicable Swiss law notice peri-

Falotti's promissory estoppel claim. *See id.* at 1206–07. We also hold that the oral contract alleged by Falotti does not meet California's statute of frauds. Even if the May and April email messages are viewed collectively, *see Addiego v. Hill*, 268 Cal.App.2d 280, 73 Cal.

Rptr. 901, 905–06 (1968), the May email is too attenuated from Falotti's April email to form an affirmation—as required by the statute to enforce the promise—and there is no mention of compensation.

ods. We need not resolve this question of Swiss law, for even if Falotti is correct, it does not follow that he is entitled to stock options or stock-option damages.

The Swiss law Employment Agreement does not mention stock options. The Stock Option Agreement contains a choice-of-law clause choosing California law and contains integration clauses. The Stock Option Agreement also grants exclusive authority to the Compensation Committee to determine when an employee ceases to be employed and thus when stock options will no longer vest. The parties do not dispute that Falotti stopped performing services for Oracle on May 31, 2000. Relying on the Stock Option Agreement, the Compensation Committee found that Falotti had no right to stock options after May 31, 2000.

Swiss law entitles Falotti only to "what he would have earned" during a notice period. SCO 337c. Falotti presumes that if Oracle had honored the Swiss law notice periods he would have earned the additional vesting of stock options. But this is not true. Even if Oracle had honored the Swiss law notice provisions by paying Falotti's salary and benefits under his Employment Agreement, the Compensation Committee's decision would have been the same because the Committee did not rely on whether the notice provisions applied. Falotti stopped providing services to Oracle on May 31, 2000—even if an employment relationship still existed for Swiss law notice-period purposes—and according to the Compensation Committee this qualified as "ceasing to be employed" under the Stock Option Agreement regardless of Swiss law.

Furthermore, according to Falotti's own Swiss law expert, the Swiss law notice provisions did not entitle Falotti to reinstatement, but only to payment of wages and benefits. Honoring the notice periods would not, therefore, have compelled a different finding by the Compensation Committee because the Committee based its decision on the date when Falotti stopped performing services for Oracle.

The Stock Option Agreement is independent of the Employment Agreement. On its face it is offered as a separate incentive to employees. Additionally, honoring the Stock Option Agreement's choice-of-law clause comports with both the law of this Court and Swiss law. *See, e.g., Northrop Corp. v. Triad Int'l Mktg., S.A.*, 811 F.2d 1265, 1270(9th Cir.1987), *amended on other grounds*, 842 F.2d 1154 (9th Cir.1988) (noting the importance of choice-of-law provisions in international agreements). Conversely, a holding by this Court ignoring the choice-of-law clause in favor of Swiss law would improperly assimilate this Stock Option Agreement into every Oracle employment contract governed by local laws. This result would severely hamper an employer's ability to maintain uniform stock-option plans for employees residing in different jurisdictions around the world.

Because the reasons for the Compensation Committee's decision—the fact that Falotti no longer performed services for Oracle—remain constant regardless of whether Falotti was paid wages and benefits in accordance with Swiss law, Falotti would not have earned the stock options once he no longer performed services for Oracle. The district court properly declared that Falotti was neither entitled to stock options nor stock-option damages.

## IV

Falotti attempts to circumvent this result by asserting that the Compensation Committee breached its covenant of good faith and fair dealing under the Stock Option Agreement.

█ Under California law, both parties to a contract owe duties of good faith and fair dealing. *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 254 Cal.Rptr. 211, 765

P.2d 373, 389 (1988). These duties prevent one party from frustrating the other party's right to receive benefits from a contract between the parties. *Guz v. Bechtel Nat'l, Inc.*, 24 Cal.4th 317, 100 Cal.Rptr.2d 352, 8 P.3d 1089, 1110 (2000).

California courts have explained how this covenant applies when a contract affords one party discretion:

> [C]ourts are not at liberty to imply a covenant directly at odds with a contract's express grant of discretionary power except in those relatively rare instances when reading the provision literally would, contrary to the parties' clear intention, result in an unenforceable, illusory agreement. In all other situations where the contract is unambiguous, the express language is to govern, and [n]o obligation can be implied ... which would result in the obliteration of a right expressly given under a written contract.

*Third Story Music, Inc. v. Waits*, 41 Cal. App.4th 798, 48 Cal.Rptr.2d 747, 753 (1995) (internal quotation marks omitted).

■ Falotti offers seven arguments in support of his contention that the Compensation Committee breached its duty of good faith and fair dealing. We address each in turn.

### A

Falotti asserts that Oracle violated California's "prevention doctrine" by improperly terminating Falotti and thus preventing him from exercising stock options. Falotti argues that he had a right to stock options, that his termination was "illegal," and thus that California law applies to prevent Oracle from prohibiting the vesting of the options.

This logic is unpersuasive. Falotti conflates "employment" under Swiss law with "ceased to be employed" under the Stock Option Agreement governed by the discretion of the Compensation Committee.

Though Oracle may have violated Swiss law by not honoring the notice periods, and thus Falotti would be entitled to continued "employment status" under Swiss law, that does not mean that the Compensation Committee was bound by the legal effect of Swiss law when determining whether Falotti was "employed" for purposes of the Stock Option Agreement.

Oracle bargained for its right to retain discretion under the Stock Option Agreement. Oracle properly exercised that right, taking into account that Falotti no longer performed any services for Oracle and thus did not meet the incentive rationale contemplated by the Stock Option Agreement, to determine when Falotti ceased to be employed for Stock Option Agreement purposes. *Id.* at 753; *see also Camp v. Jeffer, Mangels, Butler & Marmaro*, 35 Cal.App.4th 620, 41 Cal.Rptr.2d 329, 335 (1995) ("where the at-will employment relationship is terminated, the employee cannot complain about a deprivation of the benefits of continued employment, for the agreement never provided for a continuance of its benefits in the first instance." (citation omitted)).

### B

Falotti argues that since the Employment Agreement stated that his "employment" would be "governed by the laws of Switzerland," it was improper for the Compensation Committee not to consider Swiss law. But there is little doubt from the record that the Stock Option Agreement—choosing California law and granting discretion to the Compensation Committee—is an independent and integrated contract apart from any employment agreement. *See Northrop*, 811 F.2d at 1270 ("choice-of-law and choice-of-forum provisions in international commercial contracts are an almost indispensable precondition to achievement of the orderliness and predictability essential to any international business transaction, and should be

enforced absent strong reasons to set them aside." (internal quotation marks omitted)).

## C

Falotti argues that the Compensation Committee violated Cal. Civ.Code § 1642, which states that "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." There are many reasons that this section does not apply to the Stock Option Agreement and Employment Agreement. The contracts were executed at different times; concern different topics; are between Falotti and two different parties (Oracle Corporation is the party to the Stock Option Agreement but Oracle Switzerland is the party to the Employment Agreement, *see* supra note 1); contain incompatible choice-of-law terms; contain integration clauses; are not dependent on one another; and only the July 1996 Letter Agreement mentions stock options to any extent. *See Signal Cos. v. Harbor Ins. Co.*, 27 Cal.3d 359, 165 Cal.Rptr. 799, 612 P.2d 889, 896 (1980) (refusing to read contracts together where the parties are different, the contracts are not dependent on one another, and the contracts have different execution dates).

## D

Falotti asserts that even under California law he was entitled to a notice period that the Compensation Committee disregarded. This position has little merit. *See* Cal. Lab.Code § 2922 ("An employment, having no specified term, may be terminated at the will of either party on notice to the other. Employment for a specified term means an employment for a period greater than one month."); *Guz*, 100 Cal.Rptr.2d 352, 8 P.3d at 1100("An at-will employment may be ended by either party at any time without cause, for any or no reason, and subject to no procedure except the statutory requirement of no-tice." (internal quotation marks omitted)). It is undisputed that Oracle provided Falotti with notice of his termination on May 31, 2000.

## E

Falotti maintains that the Compensation Committee's decision runs contrary to the principles articulated in *Scribner v. Worldcom, Inc.*, 249 F.3d 902, 905 (9th Cir.2001). In *Scribner*, the plaintiff-employee was entitled to immediately exercise certain stock options if he was terminated "without cause." A committee, appointed by the employer, possessed the discretion to interpret the applicable stock-option plan. *Id.* at 906. Despite the fact that the employee was terminated as part of a sale of assets, and not because of performance, the committee determined that the employee had been terminated for cause. *Id.*

Reversing the grant of summary judgment to the employer, we held that the committee had discretion to interpret the stock-option plan but not to redefine the plan beyond the plain meaning of its terms. *Id.* at 911–12. Falotti argues that the same rationale applies here, as the Compensation Committee did not have the discretion to redefine "ceases to be employed" in violation of Swiss law. But Falotti's logic ignores the distinction the *Scribner* court made between "interpretation" and "redefinition." In *Scribner*, the committee's interpretation of "without cause" was so far afield from its plain meaning that it amounted to redefinition. Here, on the other hand, the Compensation Committee's determination that Falotti ceased to be employed once he stopped working for Oracle does not invoke the same concerns because the Committee's determination that "employed" means performing services for Oracle does not redefine "employed" beyond its meaning.

In the current context, the word "employ" may reasonably be interpreted to

exclude someone who is no longer acting for or being put to work by the company. The first definition of "employ" provided in *Webster's Third New International Dictionary (Unabridged)* 743 (1971) is "to make use of." *Black's Law Dictionary* 543 (7th ed.1999) offers exactly the same phrase as its first definition of "employ." Since Oracle ceased to make use of Falotti's services after May 31, 2000, the Compensation Committee's determination that he "ceased to be employed" by Oracle after that date was a reasonable application of the meaning of the word. *See also United States v. Am. Trucking Ass'ns,* 310 U.S. 534, 545, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940) ("The word ['employee'] is not a word of art. It takes color from its surroundings and frequently is carefully defined by the statute where it appears.").

### F

Falotti asserts that the Compensation Committee's decision was "contrary to the facts." Falotti alleges that the "fact" ignored by the Compensation Committee was that the Employment Agreement was governed by Swiss law and thus that he was entitled to notice periods under Swiss law. For the reasons already articulated, this argument is unavailing.

### G

Falotti maintains that the Compensation Committee treated him differently from other senior-level executives in Europe, a distinction which evinces bad faith. Falotti specifically compares his case to another senior executive with Oracle in Switzerland, Frank Moellhoff. The Compensation Committee's treatment of Moellhoff does not implicate a lack of good faith.

Moellhoff was terminated but allowed, as a courtesy, to vest stock options for one month after his termination. When Moellhoff demanded that he be allowed to vest stock options for two months in accordance with the Swiss law notice period, the Compensation Committee refused. The Committee decided that Moellhoff ceased to be employed when he stopped performing services for the company.

Falotti asserts that the treatment of Moellhoff shows that the Compensation Committee breached its covenant of good faith and fair dealing when it considered Falotti's case. But Falotti misunderstands the nature of the decision regarding Moellhoff. Nothing in the record indicates that the Compensation Committee granted Moellhoff an extra month of vesting because it felt that Swiss law should apply. It suggests the opposite. Indeed, had the Committee considered Swiss law, a two-month—not a one-month—period would have been applicable. Instead, the decision regarding Moellhoff was a discretionary choice to provide Moellhoff with one extra month of vesting as a courtesy.

When the Compensation Committee was faced with the decision of when Moellhoff ceased to be employed for purposes of the Stock Option Agreement, the minutes of its meeting specifically indicate that "the Committee members unanimously decided that Mr. Moellhoff ceased to be employed for purposes of the [Equity Incentive] Plan when *he ceased to perform services for the Company.*" (emphasis added). The issue before the Committee was identical to the one it faced with Falotti: when does an employee "cease to be employed." The results were the same in both cases. This does not suggest bad faith.

### V

Because Falotti's Stock Option Agreement was not controlled by Swiss law and afforded Oracle's Compensation Committee sole discretion to interpret the Agreement, we affirm the district court's declaration that Falotti has no rights to stock options or stock-option damages. We also affirm the district court's decision granting

summary judgment to Oracle on Falotti's promissory estoppel and oral contract claims. Each party shall bear its own costs.

AFFIRMED.